## RICHARDSON *v.* CAR LOT COMPANY ET AL.

(No. 83 CVF 3222 — Decided November 7, 1983.)

Akron Municipal Court.

*Mr. Joseph E. Hanna,* for plaintiff.
*Mr. Keith R. Forfia,* for defendant.

SCHNEIDERMAN, J. The trial was held on September 30, 1983. George T. Richardson ("Richardson") seeks a rescission, $7,500 in damages, and attorney fees from the defendant. The defendant, Car Lot Company ("Car Lot") is an Ohio corporation d.b.a. Kar Lot Co. and American Acceptance Co., Ltd.

On June 3, 1982, Car Lot sold and delivered a 1975 Ford Mustang to Richardson for $1,895. Added to that sales price was sales tax, filing fee, and $325 for "delivery, get ready, and handling," or a total purchase price of $2,349.23. Richardson paid $600 cash down and traded in his 1974 Buick for the balance owed. The balance was payable at the rate of $60 biweekly commencing June 25. Later, the payment was changed to $90 per month. Richardson made additional payments of $593 (including $358 in November and December) for a total paid of $1,193. The title was transferred to Richardson on November 1, with notation of a lien to American Acceptance Co., Ltd.

Car Lot promised to take care of any mechanical problems for ninety days. This included parts and labor. Richardson signed the agreement in two places, one being in the area where it indicates "sold as is," but the block indicating the same was not marked. The automobile was not sold "as is." No reference was made in the written sales agreement relative to the trade-in and the ninety-day warranty.

Richardson had mechanical problems with the Ford Mustang as follows:

1. Before signing the contract the car evidenced a front end problem. Car Lot corrected this problem after delivery.

2. The timing gear (chain) required replacement. This occurred June 30 and the vehicle was towed and repaired by Car Lot, except $100 advanced by Richardson. Car Lot had the vehicle two months, returning it September 1. The reasonable completion time for that repair was less than a day.

3. Electrical and ignition problems. This occurred September 15 and was repaired and paid by Car Lot.

4. The engine threw a rod. This occurred in mid-October and the vehicle was first towed to Richardson's home and then to Car Lot. Car Lot promised to fix the engine, kept the vehicle two months, and in January, replaced the engine and resold the vehicle.

Car Lot paid for two towings and all of the repairs, except $100. Richardson

had possession of the vehicle for less than two and one half months. The engine repair cost would have been $500.

Car Lot gave Richardson an express warranty as provided in R.C. 1302.26 (A)(1). That warranty covered any mechanical problems for ninety days. Car Lot honored the warranty until the engine threw the rod, including paying for repairs beyond ninety calendar days.

A warranty may be tolled during down time for repairs if it is implied from the dealings between the parties. *Mountain Fuel Supply Co.* v. *Central Engineering & Equipment Co.* (Wyo. 1980), 611 P.2d 863. The warranty period was tolled during July and August when Car Lot had the vehicle. The delay in making that repair was unreasonable and Car Lot should not benefit by its improper actions. The intent of the warranty was to cover a period while Richardson had the use of the vehicle. The engine problem was covered by the express warranty.

There was also an implied warranty. Even where there is a sale of a used car, an implied warranty can accompany it. *Bert Smith Oldsmobile, Inc.* v. *Franklin* (Fla. App. 1981), 400 So. 2d 1235. R.C. 1302.27 and 1302.28 create an implied warranty for merchantability and fitness for the purpose intended. The "sold as is" clause printed on the agreement was not a part of the understanding between the parties and thus R.C. 1302.29(C)(1) does not apply. See *Automobile Trader, Inc.* v. *Simmons* (App. 1981), 22 O.O. 3d 149.

After the engine problem, Car Lot towed the vehicle to its premises and promised to make the necessary repairs. It did nothing for over two months, and then repaired the vehicle and resold it. Car Lot had the obligation to repair the engine, undertook that task and led Richardson to believe that it would be done — all while accepting payments. These facts and the manner in which Car Lot conducted the sale violated the good faith requirements of R.C. 1301.02(C) and 1301.09 and precluded any limitation on Richardson's right to claim violation of both the express and implied warranties.

Breach of the warranties entitles Richardson to recover damages as set forth in R.C. 1302.88(B). *Eckstein* v. *Cummins* (1974), 41 Ohio App. 2d 1 [70 O.O.2d 10], and (1975), 46 Ohio App. 2d 192 [75 O.O.2d 341]. R.C. 1302.88(B) provides:

"The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount."

Richardson is entitled to recover damages limited to the difference in the market value of the Ford Mustang if it had been as warranted and the value it had due to the defects. This loss can be proven by establishing the reasonable cost of repairs as long as it is less than warranted market value and in the absence of evidence of that amount being more than the diminution in market value. *Wooster Feed Mfg. Co.* v. *Tallmadge* (1948), 82 Ohio App. 499 [38 O.O. 114]. The only evidence of difference in value was the cost to repair the engine offered by Car Lot. That cost is found to be $500, and the $100 advanced on the earlier repair is the total amount recoverable under R.C. 1302.88. The total actual damages are $600.

Car Lot violated R.C. 1345.02(A) of the Ohio Consumer Sales Practices Act. That section provides:

"No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. * * *"

R.C. 1345.05(B) empowers the Ohio Attorney General to adopt substantive rules defining the acts or practices that violate R.C. 1345.02(A). Car Lot violated the rule contained in Ohio Adm. Code 109:4-3-16, captioned "Advertisement and sale of motor vehicles." Subsection (B) of the rule provides in pertinent part

that it shall be a deceptive or unfair act or practice for a dealer to:

"(22) Fail to integrate into any written sales contract or offer, all material statements, representations or promises, oral or written, made prior to the written contract by the dealer;" and

"(17) Raise or attempt to raise the actual purchase price of any motor vehicle to a specific consumer * * *."

Car Lot violated Ohio Adm. Code 109:4-3-16(B)(22) and committed an unfair or deceptive act or practice by failing to include the trade-in and the ninety-day warranty. It violated Ohio Adm. Code 109:4-3-16(B)(17) by raising the sales price $325 for "delivery, get ready, and handling."

The remedies for violation of R.C. 1345.02 are contained in R.C. 1345.09, and it gives the consumer the option of rescinding the transaction or recovering three times the amount of his actual damages or $200, whichever is greater. R.C. 1345.09 further provides for recovery of attorney fees under subsection (F). Richardson is entitled to recover three times his actual damages or a total of $1,800.

Richardson proved that Car Lot knowingly committed the violations of R.C. 1345.02 which would entitle him to recover reasonable attorney fees, but there was no evidence offered on those fees.

Judgment is rendered accordingly for plaintiff.

*Judgment for plaintiff.*