CHARLIE'S DODGE, INC. et al., Appellants,

v.

CELEBREZZE, Atty. Gen., Appellee.

[Cite as *Charlie's Dodge, Inc. v. Celebrezze* (1991), 72 Ohio App.3d 744.]

Court of Appeals of Ohio,
Lucas County.

No. L-90-086.

Decided March 1, 1991.

*Ellis F. Robinson,* for appellants.

*Anthony J. Celebrezze, Jr.,* Attorney General, and *Ted Barrows,* for appellee.

*Per Curiam.*

This matter is before the court on appeal from the Lucas County Court of Common Pleas. The facts giving rise to this appeal are as follows.

On September 21, 1988, appellants, Charlie's Dodge, Inc. and Grogan Chrysler–Plymouth, Inc., were each served with a subpoena duces tecum by the Attorney General of the state of Ohio. Essentially, the Attorney General under R.C. 1345.06 sought documents which would prove that appellants regularly charged consumers for the delivery and handling of newly purchased automobiles. The Attorney General was investigating possible consumer fraud under R.C. Chapter 1345, the Consumer Sales Practices Act ("CSPA").

On September 21, 1988, appellants filed a motion to quash the subpoenas. Appellants argued that the Attorney General had insufficient grounds and/or authority in which to issue the subpoenas. In response, the Attorney General argued that the CSPA gives him broad authority to effectuate the purposes of the Act. The Attorney General explained that the practice of charging delivery and handling fees in the automobile sales industry has been used by unscrupulous dealers to fraudulently overcharge consumers for automobiles. Simply stated, some dealers will charge consumers for delivery and handling even though the manufacturer has already compensated the dealer for this service. With his response, the Attorney General included two preprinted

purchase orders from appellants' respective businesses showing specific price categories for delivery and handling. When contract sales forms include a category for dealer "prep" charges, the Attorney General argued that he has reasonable cause to believe that the dealer is in violation of the CSPA.

On November 15, 1988, the court found that the Attorney General had reasonable cause to believe that appellants were engaging in an unfair or deceptive sales practice. Appellants' motion to quash was denied.

On December 13, 1989, the parties agreed to allow the court to take possession of the requested documents until: (1) appellants agreed to voluntarily deliver the documents to the Attorney General, or (2) the court orders appellants to deliver the documents to the Attorney General following a contempt proceeding.

On March 7, 1990, the court found appellants in contempt of court for failing to obey the duly served subpoenas. Appellants were fined $250 and were granted ten days in which to purge their contempt of court. On March 7, 1990, appellants filed this instant appeal setting forth the following assignments of error:

"Appellant's First Assignment of Error: The common pleas court erred in finding appellants in contempt for refusing to respond to subpoenas which the Attorney General had no authority to issue or serve upon the appellants.

"Appellants Second Assignment of Error: The lower court erred in failing to find that the Attorney General was required to comply with Revised Code § 1345.08 before investigating the appellants.

"Appellants Third Assignment of Error: The lower court erred in not finding that appellants' rights protected by the Ohio and United States constitution were violated."

■ We note at the outset that this court will not reverse a lower court's finding of contempt absent an abuse of discretion. *State, ex rel. Ventrone, v. Birkel* (1981), 65 Ohio St.2d 10, 11, 19 O.O.3d 191, 417 N.E.2d 1249, 1250. Contempt has been defined by the Supreme Court of Ohio as " * * * conduct which brings the administration of justice into disrespect, or which tends to embarrass, impede or obstruct a court in the performance of its functions." *Windham Bank v. Tomaszczyk* (1971), 27 Ohio St.2d 55, 56 O.O.2d 31, 271 N.E.2d 815, paragraph one of the syllabus.

■ Because appellants' first and third assignments of error address the issue of the Attorney General's authority to issue subpoenas in this case, appellants' first and third assignments of error will be discussed together. Appellants contend that the Attorney General lacked reasonable cause to issue and serve the subpoenas under the CSPA.

R.C. 1345.06 provides in pertinent part:

"(A) If, by his own inquiries or as a result of complaints, the attorney general has reasonable cause to believe that a person has engaged or is engaging in an act or practice that violates Chapter 1345. of the Revised Code, he may investigate.

"(B) For this purpose, the attorney general may administer oaths, subpoena witnesses, adduce evidence, and require the production of relevant matter.

" * * *

"(D) A person subpoenaed under this section shall comply with the terms of the subpoena, unless the parties agree to modify the terms of the subpoena or unless the court had modified or quashed the subpoena, extended the return day of the subpoena, or issued any other order with respect to the subpoena prior to its return day.

"If a person fails without lawful excuse to obey a subpoena or to produce relevant matter, the attorney general may apply to the court of common pleas of the county in which the person subpoenaed resides or has his principal place of business for an order compelling compliance."

Appellants have attempted to equivocate the CSPA's reasonable cause standard with the standard of proof required in a civil case involving fraud, breach of contract or negligence. Appellants have also compared the CSPA's reasonable cause standard with the standard of proof required in criminal cases. However, these comparisons are unwarranted given the purpose behind the CSPA. The CSPA was enacted to protect consumers from deceptive and unconscionable sales practices and to promote the future development of fair consumer sales practices. *Thomas v. Sun Furniture Co.* (1978), 61 Ohio App.2d 78, 81, 15 O.O.3d 92, 94, 399 N.E.2d 567, 569. In furtherance of these goals, the Act was intended to provide an avenue for defrauded consumers who would otherwise have difficulty proving their case under a more traditional cause of action. Herdeg, Ohio Consumer Law (2 Ed.1989) 41. The CSPA is remedial in nature and therefore entitled to a liberal construction. *Id.* at 42, citing *Liggins v. May Co.* (1975), 44 Ohio Misc. 81, 73 O.O.2d 306, 337 N.E.2d 816. Under the CSPA the Attorney General has broad authority in which to enforce its provisions. Ohio Consumer Law, *supra,* at 78.

R.C. 1345.06(A) does not require the Attorney General to show *definitive proof* of a violation before issuing subpoenas. Rather, the Attorney General is merely required to look at the evidence and to rely on his own good judgment in deciding whether or not to issue subpoenas. In the present case, appellants' preprinted purchase orders showing specific price categories for

delivery and handling provided the Attorney General with sufficient reasonable cause to believe that appellants had violated the CSPA. Accordingly, the court did not abuse its discretion in finding appellants in contempt of court for failing to obey the duly served subpoenas. Appellants' first and third assignments of error are found not well taken.

■ In their second assignment of error, appellants contend that the Attorney General had no authority to conduct his investigation. Appellants cite R.C. 1345.08, which provides:

"If the attorney general receives a complaint or other information concerning noncompliance with Chapter 1345. of the Revised Code, by a supplier subject to other administrative supervision in this state, he shall immediately give written notice of the substance of the complaint or other information to the official or agency having supervisory authority over the supplier."

Appellants contend that under R.C. 1345.08, the Attorney General was required to notify the Motor Vehicle Dealers' Board before proceeding with his investigation. See R.C. 4517.30. Under R.C. 4517.32, the board has authority over matters involving R.C. 4517.53, which provides:

"(A) Each franchisor shall specify to its franchisee in writing the delivery and preparation obligations of the franchisees prior to the delivery of new motor vehicles to retail buyers. A copy of the delivery and preparation obligations, which shall constitute the franchisee's only responsibility for product liability between the franchisee and the franchisor, and a schedule of compensation to be paid franchisees for the work and services they are required to perform in connection with the delivery and preparation obligations, shall be filed by the franchisor with the motor vehicle dealers board and shall constitute the compensation as set forth on the schedule.

" * * *

"(B) Upon delivery of a new motor vehicle, the franchisee shall give the purchaser a copy of the delivery and preparation obligations and a written certification that the franchisee has fulfilled these obligations."

This statute addresses the manufacturer's obligation to reimburse its dealers for money the dealers spend on delivery and handling of newly purchased automobiles. This statute does not, however, address the Attorney General's concern of double dipping. That is, the problem of dealers fraudulently charging consumers a fee for delivery and handling when the dealer has already or will be reimbursed by the manufacturer. This practice of fraudulently raising an automobile's sales price by charging for delivery and handling is a violation of the CSPA. *Richardson v. Car Lot Co.* (1983), 10 Ohio Misc.2d 32, 10 OBR 539, 462 N.E.2d 459.

While we recognize that the Attorney General was required to notify the Motor Vehicle Dealers' Board under R.C. 1345.08, his failure to do so in this case does not detract from his authority to investigate possible consumer fraud on the part of appellants. Accordingly, appellants' second assignment of error is found not well taken.

The judgment of the Lucas County Court of Common Pleas is affirmed.

*Judgment affirmed.*

HANDWORK, P.J., GLASSER and MELVIN L. RESNICK, JJ., concur.