[Cite as *Eisert v. Kantner Constr.*, 2010-Ohio-4815.]


# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY


ALAN EISERT, ET AL.,

    PLAINTIFFS-APPELLANTS,

    v.                            CASE NO.  2-10-13

RICK KANTNER, dba RICK KANTNER
CONSTRUCTION, ET AL.,

    DEFENDANTS-THIRD PARTY
    PLAINTIFFS-APPELLEES,

    v.                         O P I N I O N

JACOBY L. KNERR, ET AL.,

    THIRD PARTY DEFENDANTS-
    APPELLEES.


**Appeal from Auglaize County Common Pleas Court
Trial Court No. 2008 CV 0380**

**Judgment Affirmed**

**Date of Decision:    October 4, 2010**


APPEARANCES:

    *Thomas L. Czechowski and Joseph C. Krella*  for Appellants

    *Christopher W. Carrigg*  for Appellees, Rick Kantner and Rick
    Kantner Construction, Inc.

**SHAW, J.**

{¶1} Plaintiffs-appellants, Alan and Michelle Eisert (collectively hereinafter "the Eiserts"), appeal the February 8, 2010 judgment of the Common Pleas Court of Auglaize County, Ohio, granting summary judgment in favor of the defendants-appellees, Rick Kantner, d/b/a Rick Kantner Construction, and Rick Kantner Construction, Inc., collectively herinafter ("Kantner"), and dismissing their claim for violations of the Consumer Sales Practices Act ("CSPA").

{¶2} The facts relevant to this appeal are as follows. In March, 2004, the Eiserts entered into a contract with Kantner for the construction of their residence. Included in this contract was the following provision: "BUILDER WARRANTIES HOME & INSTALLED ITEMS FOR A PERIOD OF ONE YEAR FROM DATE OF POSSESSION." Construction of the home began soon after, and the Eiserts moved into their new home in April of 2005. In April of 2007, the Eiserts noticed that the master bedroom had a moldy/musty odor. The Eiserts found that this odor was strongest along the wall near their patio door frame. They also noticed this smell in another bedroom of their home.

{¶3} In an attempt to discover the source of the odor, the Eiserts called Kantner, who informed them that he did not know what would be causing the smell. After a number of phone calls, Kantner and one of his employees came to the home in May of 2007. Kantner removed the trim from around the patio door

and sprayed expandable foam between the door and framework to seal out the smell. However, the odor returned after a couple of months, and the Eiserts moved from their home in September of 2007, because they could not tolerate the smell, which they felt was causing them headaches and making them feel ill.

{¶4} Throughout the next several months, the Eiserts and Kantner attempted to discover what was causing the odor and had tests and inspections performed to detect whether moisture was coming into the home and whether mold was present. These tests revealed that there was a leak in a corner in the basement of the home and in a corner of the master bedroom. At some point in October of 2007, the Eiserts also hired a forensic architect, Steven Bostwick, to assist them in determining the cause of the odor and how to remedy the problem. Bostwick opined that there were a number of deficiencies in the construction of the home. The majority of the problems were related to the brick veneer of the home, the ventilation in the veneer, and the flashing. According to Bostwick, these deficiencies allowed moisture infiltration into the basement and into structural components of the wall, which led to the growth of mold and offensive odors into the home. Bostwick recommended that they remove the bricks on the home five to six courses up, remove any visible mold, and then repair/replace the flashing and install new brick.

{¶5} During Bostwick's first visit to the home he spoke with Kantner about the various problems with the home, which resulted in Kantner placing a call to Jacoby Knerr, who operated the masonry company that installed the brick veneer on the Eisert home. According to Mrs. Eisert, after speaking with Knerr, Kantner informed the Eiserts that "Jacoby and I decided we would do whatever it took to fix the problem – we would remove all brick if that's what it took."

{¶6} In November of 2007, Mrs. Eisert called Kantner. During this conversation, she told him that Bostwick wanted another mold test. Mrs. Eisert stated that she felt some hesitancy on Kantner's part but Kantner then said, "well, I guess we'll go that route then." However, when she obtained a quote from someone to perform the test, Kantner objected to the price and told her that he wanted "to fix the problem and be done with it" and that he did not believe "all this testing was necessary."

{¶7} On December 31, 2007, Bruce Stege of Advantage Environmental Solutions, LLC, tested the home for mold and volatile organic compounds ("VOC"). Kantner and the Eiserts were present at the Eisert home when Stege arrived, and Kantner paid him for his services. Stege found a small amount of mold in the master bedroom and southwest bedroom. However, Stege determined that the levels he found did not indicate that mold was growing inside the home but that it was possible that small amounts of mold were growing in the walls

behind the brick because of the water influx problem at the base of the brick exterior. Based on these results, Stege recommended that the water intrusion problem be corrected, that any porous materials with mold on them be removed and replaced, and that all non-porous materials be cleaned. Stege's report also indicated that the mold in the home would not affect the average person but that it could affect someone in the home who was sensitive to mold. After reviewing Stege's report, Kantner informed Mrs. Eisert that he did not believe that he should have to pay for an extensive clean-up because of her "sensitivity."

{¶8} In January of 2008, Mrs. Eisert spoke with Bostwick about only replacing the six rows of brick because she was concerned about the replacement brick and mortar not matching the remainder of the home. At that time, Mrs. Eisert and Bostwick discussed re-bricking the whole home. According to Mrs. Eisert, Kantner agreed to replace the bottom six rows of brick and to repair the flashing on the home. However, Kantner later commented that only the bricks and flashing that were in the problem areas needed to be repaired/replaced. Mrs. Eisert also stated that Kantner informed her on March 10, 2008, that Knerr would repair the flashing and the brick and that whatever portion of the cost to repair the home that Knerr did not cover, Kantner would. In addition, Kantner told the Eiserts that he was checking with his insurance company regarding coverage he had to repair the home.

{¶9} Later that month, Mrs. Eisert asked Kantner if he had devised a plan to fix her home, but he had not at that point. Kanter later informed the Eiserts that he was only going to fix the bedroom corner and garage corner of the home, which were the corners that they knew were leaking. Upon hearing this, Mrs. Eisert asked Kantner to put this in writing, but he never did. Shortly thereafter, the communication between the Eiserts and Kantner began to deteriorate, and the parties began speaking through their attorneys.

{¶10} In order to alleviate the problems cited by Bostwick, the Eiserts eventually had another contractor remove all of the brick veneer from their home, put a new house wrap on the home, re-brick the entire house, and re-flash the foundation wall at the top. Once these things were completed, the Eiserts returned to their home in December of 2008.

{¶11} On November 3, 2008, the Eiserts filed a complaint against Kantner in the Auglaize County Common Pleas Court. In this complaint, the Eiserts alleged breach of contract and the implied warranty of good workmanship, negligence, and violations of the CSPA. Kantner filed his answer on December 3, 2008. On December 17, 2008, Kantner filed a third-party complaint against Jacoby Knerr and Knerr Masonry LTD, LLC (collectively referred to hereinafter as "Knerr"), for contribution and/or indemnity.

{¶12} The Eiserts filed a motion for leave to amend their complaint, which was granted. On October 5, 2009, the Eiserts filed their amended complaint. This complaint contained two counts against Kantner: 1) breach of contract and implied warranty; and 2) violations of the CSPA. On October 19, 2009, Kantner filed his answer to the amended complaint and filed an amended third-party complaint against Knerr.

{¶13} On January 5, 2010, Kantner filed a motion for summary judgment on the Eiserts' amended complaint. Ten days later, the Eiserts filed their response in opposition to Kantner's motion for summary judgment. On February 4, 2010, the trial court granted summary judgment in favor of Kantner on the CSPA violation claim, finding that this claim was barred by the statute of limitations, and dismissed the second count of the Eiserts' complaint. Thereafter, on February 8, 2010, the trial court amended its summary judgment entry to reflect that it found that the granting of summary judgment affected a substantial right of the Eiserts and that there was no just cause for delay.

{¶14} This appeal followed, and the Eiserts now assert two assignments of error

### ASSIGNMENT OF ERROR I

**The Trial Court Erred in Granting Partial Summary Judgment in Favor of Kantner in Finding the Eiserts did not Demonstrate that Kantner's Conduct Gave Rise to a Cause of Action Under 1345.01, et seq.**

## **ASSIGNMENT OF ERROR II**

**The Trial Court Erred in Granting Partial Summary Judgment in Favor of Kantner in Finding the Eiserts' Consumer Sales Practice Act Claim was Barred by the Statute of Limitations.**

As these assignments of error are related, we elect to address them together.

{¶15} An appellate court reviews a grant of summary judgment de novo, without any deference to the trial court. *Conley-Slowinski v. Superior Spinning & Stamping Co.* (1998), 128 Ohio App.3d 360, 363, 714 N.E.2d 991; see, also, *Hasenfratz v. Warnement*, 3rd Dist. No. 1-06-03, 2006-Ohio-2797, citing *Lorain Nat'l. Bank v. Saratoga Apts.* (1989), 61 Ohio App.3d 127, 572 N.E.2d 198. A grant of summary judgment will be affirmed only when the requirements of Civ.R. 56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R. 56(C); see *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 653 N.E.2d 1196, 1995-Ohio-286, paragraph three of the syllabus.

{¶16} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." *Mitseff v. Wheeler* (1988), 38 Ohio St.3d

112, 526 N.E.2d 798, syllabus. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R. 56(E).

{¶17} In ruling on a summary judgment motion, a court is not permitted to weigh evidence or choose among reasonable inferences, rather, the court must evaluate evidence, taking all permissible inferences and resolving questions of credibility in favor of the non-moving party. *Jacobs v. Racevskis* (1995), 105 Ohio App.3d 1, 7, 663 N.E.2d 653. Additionally, Civ.R.56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

{¶18} Our review of the Eiserts' CSPA claims begins by noting that the CSPA "is a remedial law which is designed to compensate for traditional consumer remedies and so must be liberally construed pursuant to R.C. 1.11." *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933.

Because this Act is remedial in nature, it is "entitled to a liberal construction." *Charlie's Dodge, Inc. v. Celebrezze* (1991), 72 Ohio App.3d 744, 747, 596 N.E.2d 486 (citations omitted).

{¶19} The CSPA states that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction." R.C. 1345.02(A). The statute then provides a list of representations that are considered deceptive. See R.C. 1345.02(B). However, this list specifically states that it in no way seeks to limit "the scope of division (A)[.]" Revised Code section 1345.03 is very similar to R.C. 1345.02, except that it provides that suppliers are not to "commit an unconscionable act or practice in connection with a consumer transaction." This section then list factors to consider in determining whether an act or practice is unconscionable. See R.C. 1345.03(B). In addition to the statutory lists, two other separate sources can determine what constitutes a violation of the CSPA: the Ohio Attorney General and the judiciary. See R.C. 1345.09(B); *Frey v. Vin Devers, Inc.* (1992), 80 Ohio App.3d 1, 6, 608 N.E.2d 796. However, "[a]n action under sections 1345.01 to 1345.13 of the Revised Code may not be brought more than two years after the occurrence of the violation which is the subject of suit[.]" R.C. 1345.10(C).

{¶20} In a prior decision from this Court, it was noted that

> **[t]he identified purpose for the enactment of the CSPA "was to give the consumer protection from a supplier's deceptions which he lacked under the common law requirement of proof of an intent to deceive in order to establish fraud." [*Thomas v. Sun Furniture and Appliance Co.* (1978), 61 Ohio App.2d 78, 81, 399 N.E.2d 567.] Though the CSPA is subject to liberal construction [*Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933] and the remedies afforded therein are in addition to remedies otherwise available for the same conduct under state or local law [R.C. 1345.13], courts must bear in mind the identified purpose of the law in construing the Act. Despite its clearly pro-consumer stance, the Act was not intended to encompass all aspects or breaches of consumer sales agreements but was instead directed specifically toward deficiencies in common law consumer remedial protections, which forced consumers to endure the consequences of deceptive trade practices without an adequate remedy. It must necessarily follow that the Act should generally not be extended where the claim does not involve a deceptive trade practice and consumer interests are adequately protected under alternative common law, administrative, and statutory remedies.**

*Lump v. Best Door and Window, Inc.*, 3rd Dist. Nos. 8-01-09, 8-01-10, 2002-Ohio-1389 (Walters, J., concurring).

{¶21} In the case sub judice, the Eiserts assert that Kantner violated the CSPA in the following ways: 1) failing to honor express and implied warranties, including Kantner's implied warranty of good workmanship inherent in any construction project; 2) failing to correct defective or deficient work when it was brought to Kantner's attention; 3) failing to honor representations made to the Eiserts that all defects and deficiencies would be corrected at Kanter's expense; 4)

"stalling, delaying, and ultimately failing to undertake any action to correct defects and deficiencies even after promising to do so;" and 5) "stalling, delaying, and ultimately failing to undertake any action to correct defects and deficiencies even after being presented with proper methodologies to do so."

**{¶22}** In response, Kantner maintains that he was under no obligation to the Eiserts after the expiration of the one-year warranty contained in the home construction contract, that any violation of the CSPA occurred, at the latest, in April of 2005, once the construction of the home was completed and the Eiserts took possession, and that the CSPA claims of the Eiserts are time barred. The crux of Kantner's position is that he was under no legal obligation to the Eiserts when he attempted to help them diagnose and correct whatever was causing the odor in their home and that he could have ignored their requests completely.

**{¶23}** The Eiserts agree that Kantner "could have completely ignored the Eiserts and never attempted to correct any of the problems with the home because both the CSPA statute of limitations and the parties' express warranty period had already run." Nevertheless, the Eiserts contend that once Kantner "chose to affirmatively engage in discussions with the Eiserts and actively investigate the Eiserts' problems," he subjected himself to CSPA liability for any misrepresentations he made during the remediation process. In support of their position, the Eiserts cite two cases from the Second District Court of Appeals:

*Bales v. Isaac*, 2nd Dist. No. 2003-CA-99, 2004-Ohio-4677, and *Keiber v. Spricer Construction Co.* (May 28, 1999), 2nd Dist. Nos. 98CA23, 98CA30, unreported, 1999 WL 335140.

{¶24} In *Bales*, the plaintiff-homeowners hired the defendant to purchase and apply stucco to their home. *Bales*, 2004-Ohio-4677, at ¶ 4. Prior to beginning the stucco work, the homeowners asked the defendant about a warranty on his work to which the defendant replied "that the job was 'guaranteed' and that they should contact him 'if they ever had any problems.'" *Id.*

{¶25} The job was completed in June of 1994, but in June of 2001, the homeowners discovered problems with the stucco that they claimed was due to poor workmanship by the defendant. *Id.* The defendant was contacted numerous times to have him repair the stucco and he made several promises to repair it but never did so. *Id.* The homeowners hired someone else to repair the stucco and brought suit against the defendant in December of 2001, alleging, inter alia, that the defendant violated the CSPA. *Id.* The trial court dismissed the homeowners' CSPA claim pursuant to Civ. R. 12(C) based upon the statute of limitations, but the Court of Appeals reversed, finding that the alleged violation of the CSPA occurred in 2001, when the defendant refused to honor his promise to respond if the homeowners "ever had any problems." *Id.* Notably, the Court of Appeals expressly stated that it was not determining whether the defendant's actions or

failure to fulfill his promises constituted a violation of the CSPA, as that issue was not before it for review.

{¶26} In *Keiber*, the plaintiffs entered into a contract with the defendant to purchase a parcel of land and to build them a house on this parcel. *Keiber*, supra. When the parties closed on the property in April of 1987, several items in their contract were incomplete or not completed to the homeowners' satisfaction. *Id*. The defendant informed the homeowners that it would correct these problems, and throughout the next few years, some items were completed and some were not. *Id*. The homeowners brought suit against the defendant in August of 1989, alleging, inter alia, violations of the CSPA. *Id*. The trial court overruled the defendant's motion for summary judgment on the CSPA claim, which was based upon the two-year statute of limitations. *Id*. The Court of Appeals affirmed, finding that the statute of limitations was not triggered until November 1, 1990, two years after the date of the last communication of the parties due to the continued contact between the parties and the actions of the defendant. *Id*.

{¶27} We find these cases to be inapposite to the current case. In each of those cases the defendants were under a legal obligation to the homeowners to repair the problems based upon representations they made in their contracts at the time of the original consturctions. As correctly noted by the Eiserts, Ohio courts have determined that "'[a] supplier in connection with a consumer transaction who

consistently maintains a pattern of inefficiency, incompetency, or continually stalls and evades his legal obligations to consumers, commits an unconscionable act and practice in violation of the Ohio Consumer Sales Practices Act[.]'" *Lump*, supra, quoting *Brown v. Lyons* (1974), 43 Ohio Misc. 14, 332 N.E.2d 380, paragraph two of the syllabus. However, that is not the case before this Court. Rather, the home was completed and the Eiserts took possession of the home in April of 2005. The warranty contained in the contract with Kantner was for one year from the date of possession, i.e. April of 2006. Thus, in April of 2007, Kantner was under no legal obligation to the Eiserts.

{¶28} Further, any possible CSPA violations would have occurred in 2005. Kantner was under no legal obligation in April of 2007 to promise to repair the home or to actually repair it as both the CSPA statute of limitations and Kantner's express warranty had lapsed. As acknowledged by the Eiserts, Kantner could have refused to speak with them.

{¶29} The fact that Kantner chose to return the Eiserts' phone calls, aided them in determining the cause of the odor, and promised to "fix the problem" did not amount to unfair, deceptive, or unconscionable acts. As previously noted, the CSPA is designed to protect a consumer from a supplier's deceptions and to curtail unscrupulous acts of suppliers. It was not meant to punish a supplier whose legal obligations to a consumer have ended, but yet who is willing to make a good

-15-

faith effort to remedy a problem at the request of the consumer. Further, the Eiserts have presented nothing to support their position that Kantner's promises to repair their home at his cost and his participation in determining the cause of the problems resulted in a new *legal* obligation to do so.

**{¶30}** To allow the Eiserts CSPA claim would be to place an undue burden on suppliers by exposing them to potential CSPA liability if they make any effort to assist a former customer in alleviating a problem, including promising to repair the problem at no expense to the customer, but then do not do so because of disagreements about what is necessary to adequately repair the problem or for any other reason. We find the trial court was correct in finding that the Eiserts could "not avoid the statute of limitations defense by engaging in negotiation or making demands on the implied warranty claims and then, upon a contractor failing to agree to those demands as to the manner in which claimants wish to have their implied warranty claims or breach of contract claims resolved, bootstrap such negotiations" into CSPA claims and "thus obtain the benefits of the statute and its penalties against the contractor."

**{¶31}** In short, we find that any violation of the CSPA based upon an alleged failure to honor express and implied warranties would have occurred, at the latest, in April of 2005, when the home was completed and the Eiserts took possession of it. Thus, the two-year statute of limitations expired in April of 2007.

We further find that the remaining allegations regarding Kantner's alleged failures to repair and honor representations he made after April of 2006, did not constitute violations of the CSPA. Accordingly, the trial court did not err in granting summary judgment in favor of Kantner on the CSPA claim.

{¶32} For all of these reasons, both assignments of error are overruled, and the judgment of the Common Pleas Court of Auglaize County, Ohio, is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ROGERS, J., concur.**

**/jlr**