BURNS et al., Appellees and Cross–Appellants,

v.

SPITZER MANAGEMENT, INC., et al., Appellants and Cross–Appellees.

[Cite as *Burns v. Spitzer Mgt., Inc.*, 190 Ohio App.3d 365, 2010-Ohio-5369.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 94700.

Decided Nov. 4, 2010.

366

Ronald Frederick & Associates Co., L.P.A., and Ronald I. Frederick, for appellees and cross-appellants.

Giardini, Cook & Nicol, L.L.C., and D. Chris Cook, for appellants and cross-appellees.

Frank D. Celebrezze, Judge.

{¶ 1} Defendants-appellants and cross-appellees, Spitzer Management, Inc., Spitzer Buick–Cadillac, Inc., and Alan Spitzer (collectively, "Spitzer"), appeal from an order granting the motion for class certification of plaintiffs-appellees and cross-appellants, Donna Burns and Marion McCloud ("appellees"). Appellees appeal the trial court's grant of summary judgment in favor of Alan Spitzer in his individual capacity and claim that Spitzer collected fees from consumers in sales and lease transactions in violation of the Consumer Sales Practices Act ("CSPA"). After a thorough review of the record and case law, we affirm the trial court's certification of the class, but reverse summary judgment in favor of Alan Spitzer and remand.

{¶ 2} The CSPA, codified in R.C. Chapter 1345 et seq. with regulations contained in Ohio Adm.Code 109:4, protects consumers engaged in certain transactions, including the purchase or lease of automobiles. Ohio Adm.Code 109:4–3–16(B)(21) ensures that a car dealer's advertised price is the actual price of the car. This regulation specifically limits the fees that may be charged by a dealer, so that consumers are informed of the actual price charged when comparison shopping.

{¶ 3} Appellees assert that Spitzer violated the CSPA by collecting a "dealer overhead" fee in many of its consumer transactions. Appellees claim that they were charged $197.50, identified as a "dealer overhead" fee, in addition to the price of the car each purchased. Appellees brought suit on November 9, 2006, for these alleged violations, claiming fraud, civil conspiracy, and punitive damages, and seeking class status. Alan Spitzer, in his individual capacity, filed for summary judgment, asserting that appellees had not alleged facts that would permit them to pierce the corporate veil.[1] On February 5, 2010, the trial court granted summary judgment in favor of Alan Spitzer. The trial court also granted class certification on the same date. The parties then filed their appeals, each raising a single assignment of error.

## Law and Analysis

### Class Certification

{¶ 4} Spitzer argues that appellees fail to meet any of the requirements for class certification. In *Baughman v. State Farm Mut. Auto. Ins. Co.* (2000),

---

1. "Under this exception [to corporate immunity for shareholders, officers, and directors], the 'veil' of the corporation can be 'pierced' and individual shareholders held liable for corporate misdeeds when it would be unjust to allow the shareholders to hide behind the fiction of the corporate entity." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos., Inc.* (1993), 67 Ohio St.3d 274, 287, 617 N.E.2d 1075.

88 Ohio St.3d 480, 727 N.E.2d 1265, the Ohio Supreme Court reaffirmed that the standard of review to be applied for class-action certification is abuse of discretion. A trial court possesses broad discretion in determining whether a class action may be maintained. That determination will not be disturbed absent a showing that the discretion was abused. Id. An abuse of discretion implies that the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Beder v. Cleveland Browns, Inc.* (1998), 129 Ohio App.3d 188, 717 N.E.2d 716. The trial court's decision regarding the certification of a class should not be reversed on appeal because the appellate judges would have decided the issue differently had the initial determination been in their hands. *Hamilton v. Ohio Sav. Bank* (1998), 82 Ohio St.3d 67, 694 N.E.2d 442.

{¶ 5} The class action is an invention of equity. Its purpose is to facilitate adjudication of disputes involving common issues between multiple parties in a single action. *Planned Parenthood Assn. of Cincinnati, Inc. v. Project Jericho* (1990), 52 Ohio St.3d 56, 62, 556 N.E.2d 157. The plaintiff bears the burden of establishing the right to a class action. *Shaver v. Std. Oil Co.* (1990), 68 Ohio App.3d 783, 589 N.E.2d 1348. Class certification in Ohio is based on Rule 23 of the Ohio Rules of Civil Procedure, which is identical to Rule 23 of the Federal Rules of Civil Procedure.

{¶ 6} In *Warner v. Waste Mgt., Inc.* (1988), 36 Ohio St.3d 91, 521 N.E.2d 1091, the Ohio Supreme Court set forth seven elements for a class to be certified. In determining whether a class action is properly certified, the first step is to ascertain whether the threshold requirements of Civ.R. 23(A) have been met. Once those requirements are established, the trial court must turn to Civ.R. 23(B) to discern whether the purported class comports with the factors specified therein. Accordingly, before a class may be certified as a class action, a trial court must make seven affirmative findings. *Warner* at paragraph one of the syllabus.

{¶ 7} Four prerequisites are explicitly set forth in Civ.R. 23, while two prerequisites are implicit in the rule. Id. The two implicit prerequisites are (1) that the class must be identifiable and unambiguously defined and (2) that the class representatives must be members of the class. Id. at 96, 521 N.E.2d 1091.

{¶ 8} The four delineated prerequisites in Civ.R. 23(A) include the following: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." Id. at 97, 521 N.E.2d 1091, quoting Civ.R. 23(A).

{¶ 9} Finally, the trial court must also find that one of the three Civ.R. 23(B) requirements is met before the class may be certified. Id. at 94, 521 N.E.2d 1091; see also *Hamilton v. Ohio Sav. Bank*, 82 Ohio St.3d 67, 694 N.E.2d 442. If the class movant fails to meet one of these requirements, class certification must be denied.

{¶ 10} Civ.R. 23(B)(3) requires that the questions of law or fact common to the members of the class predominate over any questions affecting individual members. As stated in *Hamilton*, "Civ.R. 23(B)(3) provides that an action may be maintained as a class action if, in addition to the prerequisites of subdivision (A), 'the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy.'" Id. at 79, 694 N.E.2d 442.

{¶ 11} The matters pertinent to the findings include: (a) the interest of members of the class and individually in controlling the prosecution of defense of separate actions, (b) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class, (c) the desirability or undesirability of concentrating the litigation of the claims in a particular forum, and (d) the difficulties likely encountered in the management of the class action.

{¶ 12} In order to satisfy the predominance requirement, the appellant must show that the common questions of law and fact represent a significant aspect of the class and are capable of resolution for all members of the class in a single adjudication. *Shaver v. Std. Oil Co.*, 68 Ohio App.3d at 799, 589 N.E.2d 1348. The mere assertion that common issues of law or fact predominate does not satisfy the express requirements under the rule. In *Waldo v. N. Am. Van Lines, Inc.* (W.D.Pa.1984), 102 F.R.D. 807, the court stated: "[It] is not simply a matter of numbering the questions in the case, labelling [sic] them as common or diverse, and then counting up. It involves a sophisticated and necessarily judgmental appraisal of the future course of the litigation * * *."

{¶ 13} When the circumstances of each proposed class member need to be analyzed to prove the elements of the claim or defense, then individual issues would predominate and class certification would be inappropriate. *Schmidt v. Avco Corp.* (1984), 15 Ohio St.3d 310, 314, 15 OBR 439, 473 N.E.2d 822.

{¶ 14} The class definition proposed by appellees states:

{¶ 15} "All *consumers* who, between December 1, 2004, and the present, have purchased or leased new or used vehicles from Spitzer * * * and *have been charged*, in conjunction with such a lease or purchase, a fee for 'dealer overhead' in excess of sales tax and document and title fees, and any other fee permitted

under Ohio law to be charged to a consumer in a motor vehicle sale or lease transaction." (Emphasis added.)

{¶ 16} This definition limits the class to all consumers who were allegedly charged a fee in violation of the CSPA. These individuals would have actually suffered damages if they were charged a fee in contravention of the CSPA. The CSPA prohibits a car dealer from advertising "any price for a motor vehicle unless such price includes all costs to the consumer except tax, title and registration fees, and a documentary service charge, provided such charge does not exceed the maximum documentary service charge permitted to be charged pursuant to section 1317.07 of the Revised Code. Additionally, a dealer may advertise a price that includes a deduction for a discount or rebate that all consumers qualify for, provided that such advertisement clearly discloses the deduction of such discount or rebate." Ohio Adm.Code 109:4–3–16(B)(21).

{¶ 17} Appellees have met all the requirements of Civ.R. 23. Similar questions were raised regarding the propriety of class certification in *Washington v. Spitzer Mgt., Inc.,* Cuyahoga App. No. 81612, 2003-Ohio-1735, 2003 WL 1759617, where this court found that class certification was proper. Spitzer attempts to distinguish the present case from *Washington* by alleging that a negotiated fee differs from a fee charged on each transaction in a preprinted contract that was not negotiable. The only difference between *Washington* and the present case is that the contract used by Spitzer in *Washington* contained a preprinted item charging a "dealer overhead" fee of $97.50. Here "dealer overhead" was pre-printed on the contract form, but the amount of this fee, which ranged from $10 to over $900, was written in and negotiated between the parties. This is a distinction without a difference.

{¶ 18} Appellants argue that because the price was negotiated, consumers were not misled and no violation occurred. This argument contravenes the basic remedial purpose of the CSPA, which is the development of fair consumer sales practices, including the ability to accurately compare prices when shopping for a vehicle. *Charlie's Dodge, Inc. v. Celebrezze* (1991), 72 Ohio App.3d 744, 747, 596 N.E.2d 486. That the price is negotiable once the consumer is in the high-pressure sales room of a car dealership does not accomplish this purpose.

{¶ 19} The regulations promulgated to delineate what a car dealer may do when advertising cars clearly set forth the fees that may be charged in addition to the advertised price. Ohio Adm.Code 109:4–3–16(B)(21). Those fees include a document preparation fee, tax, and title. Appellee McCloud's sales contract, included in the record, shows a listed price for the car followed by various fees, including tax, title, document preparation, and "dealer overhead." This fee appears to be charged in addition to the price of the car. There is a colorable claim common to all proposed class members, namely that they were charged a fee in violation of the CSPA.

374

■ {¶ 20} The proposed class is also readily identifiable. Again, it consists of all consumers who were charged a fee in violation of the CSPA. There are numerous similarly situated individuals who were charged this "dealer overhead" fee during the period specified in the class. Appellees estimate the class to include some 10,000 members.

■ {¶ 21} Commonality is also not an issue here. Spitzer argues that because each fee was negotiated, a common nucleus of operative facts or common liability issue does not exist in this case. Simply because the fees charged differ between class members does not give rise to a divergence of issues. The damages may be different between class members, but the alleged wrongdoing is the same.

■ {¶ 22} Typicality is also met in this case. The proposed class members are situated similarly to the rest of the class as consumers who leased or purchased vehicles from Spitzer and were charged a "dealer overhead" fee. The fact that negotiations between class members may have differed in relation to the fees does not lead to the conclusion that the proposed class representatives cannot meet the typicality requirement. Likewise, McCloud and Burns adequately represent the interests of the purported class.

■ {¶ 23} Finally, Spitzer argues that the elements of Civ.R. 23(B) cannot be met because questions affecting individual class members predominate, and a class action would deprive class members of certain remedies available to them individually.

{¶ 24} Again, individual negotiations of a fee, which appellees claim was paid in violation of the CSPA, do not raise a significant question uncommon to all members. This court, in *Washington,* 2003–Ohio–1735, 2003 WL 1759617, found that a class action was the superior method to resolve this dispute, and the instant case presents almost the exact situation. Id. at ¶ 52. The amount of the fee charged may differ between class members, but that is an issue that can be addressed when awarding damages and is easily ascertainable from Spitzer's business records. See *Vinci v. Am. Can Co.* (1984), 9 Ohio St.3d 98, 102, 9 OBR 326, 459 N.E.2d 507.

{¶ 25} The trial court did not abuse its discretion in granting appellees' motion for class certification. This case presents a situation substantially similar to that previously addressed in *Washington.* The same result is therefore warranted.

## Cross-appeal

### Individual Liability of a Corporate Officer

■ {¶ 26} Appellees bring an appeal of the trial court's grant of summary judgment in favor of Alan Spitzer individually, dismissing him from the suit.

Appellees allege that Alan Spitzer, president and corporate director of the Spitzer entities, directed employees to charge a fee that he knew violated the CSPA.

{¶ 27} "Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

{¶ 28} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265; *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. In *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary-judgment standard as applied in *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under *Dresher*, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, *and identifying those portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the nonmoving party's claim.*" (Emphasis sic.) Id. at 296, 662 N.E.2d 264. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293, 662 N.E.2d 264. The nonmoving party must set forth "specific facts" by the means listed in Civ.R. 56(C), showing that a genuine issue for trial exists. Id.

{¶ 29} This court reviews the lower court's granting of summary judgment de novo. *Brown v. Scioto Cty. Bd. of Commrs.* (1993), 87 Ohio App.3d 704, 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ.R. 56(C). "[T]he reviewing court evaluates the record * * * in a light most favorable to the nonmoving party. * * * [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." *Saunders v. McFaul* (1990), 71 Ohio App.3d 46, 50, 593 N.E.2d 24.

{¶ 30} In the present case, appellees argue that Alan Spitzer was put on notice, through significant prior litigation,[2] that a "dealer overhead" fee paid in addition

---

2. Appellees cite a history of litigation stretching as far back as 1960 alleging that Spitzer entities charged illicit fees, the most recent of which was *Washington*, 2003-Ohio-1735, 2003 WL 1759617, which resulted in a settlement.

to the advertised price of a car was a violation of the CSPA, but that he continued to direct his employees to collect the fee and even increased the fee by roughly $100 from the fee charged in *Washington*, 2003-Ohio-1735, 2003 WL 1759617.

{¶ 31} Generally, a corporate officer is not individually liable for actions taken in the name of the corporation. However, "the corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will, or existence of its own, (2) control over the corporation by those to be held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong." *Belvedere Condominium Unit Owners' Assn. v. R.E. Roark Cos.* (1993), 67 Ohio St.3d 274, 289, 617 N.E.2d 1075.

{¶ 32} Under the CSPA, corporate officers can be "dealers" within the meaning of Ohio Adm.Code 109:4-3-16(A)(1), and an officer of a corporation is individually liable for each violation of the CSPA in which he personally participates. *Stultz v. Artistic Pools, Inc.* (Oct. 10, 2001), Summit App. No. C.A. 20189, 2001 WL 1219473. Liability also exists for actions when "the officer took part in the commission of the act, specifically directed the particular act to be done, or participated or cooperated therein." *Grayson v. Cadillac Builders, Inc.* (Sept. 14, 1995), Cuyahoga App. No. 68551, 1995 WL 546916, *3, citing *State ex rel. Fisher v. Am. Courts, Inc.* (July 21, 1994), Cuyahoga App. No. 65939. The officer's "liability flows not from his status as * * * an officer * * *, but from his personal actions in violating CSPA." *Inserra v. J.E.M. Bldg. Corp.* (Nov. 22, 2000), Medina App. No. 2973-M, 2000 WL 1729480, at *5, citing *Sovel v. Richardson* (Nov. 15, 1995), Summit App. No. 17150, 1995 WL 678558. This court noted that the CSPA "does not change the existing common law of tort, nor does it change the common law rule with respect to piercing the corporate veil. A corporate officer may not be held liable merely by virtue of his status as a corporate officer. It does, however, create a tort which imposes personal liability upon corporate officers for violations of the act performed by them in their corporate capacities." *Grayson* at *3, fn. 1.

{¶ 33} Here, appellees have alleged that Alan Spitzer directed his employees to charge a fee he knew to be in violation of the CSPA. Alan Spitzer signed prior settlement agreements in *Washington*, 2003-Ohio-1735, 2003 WL 1759617, and other cases that dealt with the legality of such a fee. The trial court found that appellees had not alleged facts that would allow them to pierce the corporate veil. That is not required in order to hold Alan Spitzer individually liable in this case. If Alan Spitzer directed employees of Spitzer to collect a fee

he knew was a violation of the CSPA, as appellees allege and Alan Spitzer's deposition testimony tends to support, then he can be held individually liable. During his deposition, Alan Spitzer admitted that he was aware of a memo authored by a Spitzer employee stating that charging the "dealer overhead" fee in addition to the advertised price of cars would be a violation of the CSPA. Alan Spitzer also admitted to having veto power over decisions made within the businesses. Therefore, according to *Grayson*, 1995 WL 546916, Alan Spitzer may be individually liable if appellees are able to prove these allegations at trial.

{¶ 34} At this point in the litigation, a material question of fact exists as to whether Alan Spitzer knowingly directed Spitzer employees to collect from consumers a fee that violated the CSPA. Therefore the trial court's grant of summary judgment in Alan Spitzer's favor is reversed.

### Conclusion

{¶ 35} The trial court did not err in granting appellees' class-certification motion. Appellees met all the requirements of Civ.R. 23. However, the trial court did err in granting summary judgment in favor of Alan Spitzer because appellees are not required to pierce the corporate veil to hold Alan Spitzer individually liable; he need only to have personally directed Spitzer employees to collect the fee in violation of the CSPA. On this issue, a material question of fact remains.

{¶ 36} The judgment is affirmed in part and reversed in part, and the cause is remanded to the lower court for further proceedings consistent with this opinion.

Judgment accordingly.

BLACKMON, P.J., and DYKE, J., concur.