SELZNICK, APPELLANT, *v.* THE TOLEDO EDISON CO., APPELLEE.

(Decided December 11, 1939.)

*Mr. Moe L. Okun* and *Mr. Willard Hetzell,* for appellant.

*Messrs. Welles, Kelsey, Cobourn & Harrington* and *Mr. Fred A. Smith,* for appellee.

CARPENTER, J. In the trial court a demurrer to the petition was sustained and the suit dismissed. From

that judgment this appeal on questions of law was taken.

In substance, the petition alleges that the defendant is a public utility engaged in producing and selling electric current for power and light purposes in the city of Toledo; the plaintiff is one of many consumers of the product and on behalf of himself and all other such consumers he brings this suit to require the utility to account for money he claims was illegally collected from such consumers and to enjoin collection of such money in the future; in April, 1935, the utility and the council of the city of Toledo agreed upon a schedule of rates to be paid for its product for a five-year period based on its expenses of operation and a fair return on the value of its investment; the utility represented one item of such expense to be an excise tax to the state of Ohio of one per cent of its gross sales; on April 5, 1937, that tax expired and was not renewed by the state until January 26, 1938, and then for only sixty-five hundredths of one per cent, and this continued to date of this petition.

Three reasons are assigned by plaintiff why the part of the money collected by defendant from its consumers as based on the operating expense element of its rates is illegal to the extent of this tax during the period no tax was collected, and for thirty-five hundredths of one per cent since January 26, 1938: (a) The utility misrepresented the tax as one of its expense items for the contract period; (b) as between the parties there was a mutual mistake of fact in including the tax as such expense item for the five years; and (c) to permit the utility to collect the full contract rates during the time it paid no part of that tax, or during the time of the present reduced tax, results in an unjust enrichment of it at the expense of plaintiff and all other consumers.

The demurrer to the petition is upon three grounds: (1) The court does not have jurisdiction of the subject

of the action; (2) the plaintiff does not have legal capacity to sue; and (3) the facts stated in the petition do not show a cause of action.

The last ground will be considered first.

In two cases, abrogation or modification of similar contracts as relief from the injustice resulting from changed conditions affecting operating expenses of a utility was asked of and denied by the courts.

During the World War the cost of both labor and materials was greatly increased for The Columbus Railway, Power & Light Company and it attempted to surrender its franchise. Making the city of Columbus a party defendant, it asked the federal courts to enjoin the city from interfering with its abandonment of its service. The Supreme Court of the United States refused the relief and in effect required that utility to perform its contract, even at a great loss to it. *Columbus Ry., Power & Light Co.* v. *City of Columbus,* 249 U. S., 399, 63 L. Ed., 669, 39 S. Ct., 349. That court said:

"That there might be a rise in the cost of labor, and that the contract might at some part of the period covered become unprofitable by reason of strikes or the necessity for higher wages, might reasonably have been within their contemplation when the contract was made, and provisions made accordingly. * * * It may be, and, taking the allegations of the bill to be true, it undoubtedly is, a case of a hard bargain. But equity does not relieve from hard bargains simply because they are such."

The other side of the problem was presented in *Akron* v. *Public Utilities Commission,* 126 Ohio St., 333, 185 N. E., 415. As in this case, that city and a gas company had, by ordinance, made a contract as to rates to be charged consumers for the product of the utility. Those rates were based in part on operating costs; the depression greatly reduced such costs and the city, alleging an emergency, asked the Public Utili-

ties Commission of Ohio to reduce the rates fixed in the accepted ordinance. In sustaining the action of the commission denying it had power to grant the relief, the court said:

"The rights of the parties became vested when the gas company accepted the proffer of the city, and we know of no power delegated, or that could be delegated to any individual or state agency to in any wise interfere with these vested rights. If the state Legislature undertook to do so, it would be walking squarely in the face of the Constitution of the state.

"We are not unmindful that the state and its municipalities are given a wide latitude in the exercise of their police powers; but the state cannot extend its police power or that of its municipalities so as to interfere with vested contract rights. An interest in a contract is private property, and it has the same sacrosanct attributes as other property."

These cases recognize that such contracts "are governed by the same principles as apply to contracts between individuals," as was asserted in *Phelps* v. *Logan Natural Gas & Fuel Co.*, 101 Ohio St., 144, 128 N. E., 58.

The plaintiff, apparently recognizing the force of these decisions as precluding any relief to him merely because changed conditions affected the utility favorably as to the tax item of its operating expenses, now argues that his petition makes a case of a contract into the making of which there has entered either fraudulent representations or mutual mistake of fact.

As this tax was fixed by the law of Ohio, the opportunity and the duty of the city of Toledo, acting for this plaintiff and other users of electricity as one of the contracting parties, to know that the tax would expire when it did was equal to that of the utility. Neither party could know when, if at all, the tax might be renewed, or for what amount; that all depended upon future legislation, about which no one

knew. Both parties took their chances on the future in this respect, as they did with other operating costs. Had the tax been renewed for a higher rate, the utility could not have increased its rates to reimburse it for the increased tax it had to pay.

It would be quite impossible to revise the contract rates chargeable by the utility with every fluctuation of operating expense, unless the contract by its terms so provided and fixed the *modus operandi* of making such revision.

The claim that either fraud or mutual mistake of fact entered in the making of the contract is not sustained by the facts alleged in the petition. There being no infirmity in the contract in the manner in which it was made, and the supreme courts, both federal and state, having recognized the sanctity of and property rights in such a contract and the hazard of changing conditions which both parties must assume, the advantage which happened to accrue to the utility in reference to the tax item did not result in its unjust enrichment. All of this leads to the conclusion that a cause of action was not stated in the petition.

But assuming one or more of these infirmities were present, the courts would lack the power to revise the contract for the parties; that is a legislative, not a judicial, function. All the courts could do would be to declare the contract void and thereby clear the way for the parties to make a new contract, if they so desired. That is not the objective of this suit, but rather the court is asked, in effect, to set up a new rate schedule for the parties to the contract, a subject-matter over which the courts do not have jurisdiction.

Hence the third and first grounds of the demurrer are well taken and on them its sustention was not error. Having arrived at this conclusion on the two vital issues presented by the demurrer, this court does not deem it necessary to consider the second ground,

the legal capacity of the plaintiff to bring the action, because clearly he has no cause of action.

The judgment of the lower court is affirmed.

*Judgment affirmed.*

OVERMYER and LLOYD, JJ., concur.