[Cite as *Nye v. White-Rhoades*, 2015-Ohio-3719.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

DENNIS D. NYE, ET AL.,

    PLAINTIFFS-APPELLEES,

    v.                              CASE NO. 9-15-04

CYNTHIA K. WHITE-RHOADES,

    DEFENDANT-APPELLANT,
    -and-

WAYNE RHOADES,

    DEFENDANT-APPELLEE,         O P I N I O N

    v.

CORY NYE,

    THIRD-PARTY DEFENDANT-APPELLEE.

---

**Appeal from Marion County Common Pleas Court**
**Trial Court No. 08-CV-0582**

**Judgment Affirmed**

**Date of Decision: September 14, 2015**

---

APPEARANCES:

    *Jeff Ratliff* **for Appellant**

    *Kevin P. Collins* **for Appellee**

**ROGERS, P.J.**

{¶1} Defendant-Appellant, Cynthia K. White-Rhoades ("Cynthia"), appeals the December 21, 2012 and May 8, 2013 judgment entries of the Court of Common Pleas of Marion County. In its May 8, 2013 judgment entry, following a bench trial, the trial court awarded Plaintiff-Appellee, Dennis D. Nye ("Dennis"), judgment in the amount of $20,790.35 against Cynthia. $20,790.35 represented the amount that the trial court concluded Cynthia owed Dennis ($22,131.67), offset by the amount Dennis owed Cynthia ($1,341.32). On appeal, Cynthia argues that the trial court erred in finding that Dennis did not violate the Consumer Sales Practices Act ("CSPA"); and by failing to award damages Cynthia sought in her counterclaim. For the reasons that follow, we affirm the trial court's decision.

{¶2} This case stems from a home-improvement project between relatives that went awry. Cynthia's husband, Defendant-Appellee, Wayne Rhoades ("Wayne"), is the half-brother to Dea Nye ("Dea"), the wife of Dennis's son, Third-Party Defendant-Appellee, Cory Nye ("Cory"). (Feb. 6, 2012 Tr. at 134). Wayne and Cynthia learned at a family get-together that Cory's father, Dennis, owned a construction business, so Wayne told Cory that he and Cynthia were thinking of renovating their house in Marion, Ohio. (*Id.*); (Feb. 7, 2012 Tr. at 402).

To get a feel for the project, Cory visited and walked through the house with Wayne and Cynthia; then, Cory and Dennis visited together. (*Id.* at 134-140); (*Id.* at 405-407). At a family cookout at Cory and Dea's house, Dennis gave Cynthia and Wayne a "rough estimate" for the addition onto their home and said he could either bid for the job or charge them for labor and materials. (*Id.* at 21-25, 140-141); (*Id.* at 411-415). Cynthia and Wayne ultimately decided to hire Dennis for the job, and Cynthia agreed to be billed at the end of each month for labor and materials. (*Id.* at 25-27, 141-142); (*Id.* at 412).

{¶3} In July 2007, Dennis and Cory commenced work at Cynthia and Wayne's house, with Cory serving as the worksite foreman and Dennis frequently absent from the worksite. (Feb. 6, 2012 Tr. at 33, 93-94). Work on the home continued until February 19, 2008, including many home improvements not included in the rough estimate. For example, Dennis and Cory built and installed a sink in Cynthia and Wayne's basement (*id.* at 55, 155); built a new front porch (*id.* at 60, 148); purchased and installed a new sump pump (*id.* at 63, 155); moved a door in the garage (*id.* at 64, 156); and installed hardwood floors (*id.* at 66, 156). All of these improvements were not included in the rough estimate.

{¶4} Dennis sent invoices to Cynthia and Wayne each month. (*Id.* at 28). Cynthia and Wayne paid each invoice that was billed for the work completed in 2007.

**{¶5}** In November 2007, in a meeting between Dennis, Cynthia, and Cynthia's father, John White ("John"), John requested that Dennis provide an accounting of the work performed. (Feb. 7, 2012 Tr. at 390-391). In response, Dennis supplied a document, which Cynthia described as "an estimate for things that were already done." (*Id.* at 391). After getting advice from her father, Cynthia decided to stop paying the invoices. (*Id.* at 392). Therefore, Cynthia did not pay the invoice for January or February of 2008. (Feb. 6, 2012 Tr. at 39, 41). The amount of the January 2008 invoice totaled $18,791.10 and the February 2008 invoice, which accounted for all the work completed up until February 19, 2008, totaled $3,340.67. (*Id.* at 39, 41, 43-44).

**{¶6}** On July 17, 2008, Dennis "dba Dennis Nye Construction" filed a "complaint on contract" against Cynthia and Wayne, and the case was assigned case number 08-CV-0582. (Docket No. 1). Dennis alleged that he entered into "multiple agreements" with Cynthia and Wayne "to do certain remodeling work" at Cynthia and Wayne's residence. (*Id.*). Dennis alleged that he performed work under the agreements until Cynthia and Wayne refused to pay for materials and labor. (*Id.*).

**{¶7}** Cynthia and Wayne filed their answer, counterclaim, and third-party complaint on July 24, 2008. (Docket No. 4). In their answer, Cynthia and Wayne alleged Dennis's "claims are barred and must be eliminated by recoupment or set

off" because they paid Dennis in excess of his estimates and because they incurred damages as a result of the "negligent construction" of Dennis and Cory. (*Id.*). Cynthia and Wayne's counterclaim contained two counts: slander of title and violation of CSPA. (*Id.*). Their third-party complaint against Cory appeared to allege only a CSPA count. (*Id.*). Attached to Cynthia and Wayne's answer, counterclaim, and third-party complaint were two undated, purported estimates prepared by Dennis and Cory and delivered to Cynthia. (*Id.*).

{¶8} Dennis and Cory filed their answers to the counterclaim and third-party complaint on August 26, 2008 and then, with leave of court, filed amended answers on January 29, 2009. (Docket Nos. 9, 17).

{¶9} On March 3, 2009, the trial court consolidated case number 08-CV-0996, Central Mutual Insurance Company ("Central Mutual"), et al. v. Dennis Nye, et al., with case number 08-CV-0582. (Docket No. 18).

{¶10} On October 15, 2009, Dennis and Cory filed a joint motion for summary judgment. (Docket No. 33). On November 25, 2009, Cynthia, Wayne, and Central Mutual filed a joint response to Dennis and Cory's motion for summary judgment. (Docket No. 50). Dennis and Cory filed their reply on December 24, 2009. (Docket No. 53). In an April 7, 2010 entry, the trial court denied Dennis and Cory's motion for summary judgment. (Docket No. 67).

{¶11} On February 22, 2010, Dennis and Cory filed a motion to enforce a purported settlement agreement between Central Mutual, Cynthia, and Dennis. (Docket No. 58). Central Mutual filed its response in opposition on March 1, 2010. (Docket No. 62). Dennis and Cory filed their reply the next day. (Docket No. 64). Central Mutual filed a surreply on March 9, 2010. (Docket No. 66). In its April 7, 2010 entry, the trial court denied Dennis and Cory's motion to enforce the purported settlement agreement. (Docket No. 67).

{¶12} On July 26, 2010, Owners Insurance Company ("Owners Insurance") moved to intervene "for the purposes of filing an intervening complaint for declaratory judgment, pertaining to issues of insurance coverage." (Docket No. 69). Dennis and Cory filed a response on August 17, 2010, objecting to Owners Insurance's intervention. (Docket No. 74). Owners Insurance filed its reply on August 27, 2010. (Docket No. 75). On February 16, 2011, the trial court granted Owners Insurance's motion to intervene and allowed it to file its complaint for a declaratory judgment stating that it had no duty to indemnify Dennis and Cory. (Docket Nos. 95-97).

{¶13} After the parties conducted discovery and after multiple continuances of the trial, a bench trial was held on February 6, 7, 8, and 9, 2012. (*See* Docket Nos. 123-126.5).

{¶14} On September 20, 2012, the trial court ordered that the parties "submit memorandums in support of their respective positions (closing arguments)." (Docket No. 127). Cynthia and Wayne filed their "summary of case and final arguement [sic]" on October 23, 2012. (Docket No. 130). Dennis and Cory filed their memorandum in support of their positions on November 21, 2012. (Docket No. 132).

{¶15} On December 21, 2012, the trial court filed an entry awarding "judgment in favor of the Plaintiff in the amount of $20,790.35 ($22,131.67 less $1,341.32 off-set)." (Docket No. 133). The trial court also found that "the Plaintiff, in its memorandum" admitted that Wayne "should be dismissed at [sic] a party-defendant since the real estate in this case is in the name of [Cynthia]." (*Id.*). Finally, the trial court found "that any and all responsibility on behalf of the Plaintiff [sic], Cory Nye, is not appropriate and he should be dismissed from this case." (*Id.*).

{¶16} On December 28, 2012, Cynthia and Wayne requested that the trial court state "in writing its findings of fact found separately from its conclusion of law in support of its judgment in this case." (Docket No. 134). The trial court denied Cynthia and Wayne's request on January 25, 2013, concluding that Civ.R. 52 allows a party to request separate conclusions of fact and law if the trial court

issues a general verdict [sic] and that the trial court in this case did not issue a general verdict [sic.][1]

{¶17} One week earlier, on January 18, 2013, Cynthia filed a notice of appeal of the trial court's December 21, 2012 entry. (Docket No. 135). On February 19, 2013, we dismissed Cynthia's appeal because the December 21, 2012 entry was not a final, appealable order for the reason that it entered judgment as to one but fewer than all of the parties and claims. (*See* Docket No. 139); *Nye, et al. v. White-Rhoades, et al.*, Case No. 9-13-03 (JE, Feb. 19, 2013).

{¶18} On May 8, 2013, the trial court filed an entry awarding Dennis judgment against Cynthia in the amount of $20,790.35, representing $22,131.67 owed to Dennis by Cynthia "less an offset judgment in the amount of $1,341.22 [sic] owed by [Dennis] to [Cynthia] arising out of her counterclaim." (Docket No. 142). In rendering that judgment, the trial court relied on reasons set forth in its December 21, 2012 entry. (*Id.*). The trial court dismissed Wayne as a party defendant because "the real estate at issue was solely owned by [Cynthia]." (*Id.*). The trial court dismissed Cynthia and Wayne's third-party complaint against Cory. (*Id.*). The trial court dismissed Central Mutual and Cynthia's complaint against Dennis and John Doe, employee. (*Id.*). Finally, the trial court dismissed Owners Insurance's intervening complaint that because the trial court did not render

---

[1] The trial court used the term verdict. However, a verdict is a jury's findings on the factual issues in a case. A judgment, by contrast, is a court's final determination of the rights and obligations in a case. Thus, in a bench trial, such as here, the trial judge's final determination is made by way of a judgment.

judgment against Dennis or Cory, the question of whether Owners Insurance owed a duty to defend or indemnify Dennis and Cory was moot. (*Id.*).

{¶19} Cynthia appealed the trial court's May 8, 2013 entry on June 4, 2013. (Docket No. 143). However, on June 9, 2014, we dismissed Cynthia's appeal because the May 8, 2013 entry was still not a final, appealable order. Specifically, we found that the trial court did not dispose of Cynthia's slander of title count and because it appeared that it "awarded Cynthia $1,341.22 on legal theories other than slander of title and violation of the CSPA." *Nye*, *et al. v. White-Rhoades, et al.*, Case No. 9-13-28 (JE, June 9, 2014).

{¶20} On January 2, 2015, the trial court filed another judgment entry in this case. In this judgment entry, the court awarded Dennis $20,790.35, which represented the amount owed to Dennis by Cynthia, less "an offset judgment in the amount of $1,341.22 owed by Plaintiff Dennis D. Dye [sic] to Defendant Cynthia K. White-Rhoades arising out of her First Counterclaim for slander of title. The sum of $1,341.22 represents damage caused by Plaintiff to the value of the property due to the defective workmanship outlined in this Court's December 21, 2012 Journal Entry." (Docket No. 153, p. 2-3).

{¶21} Cynthia timely appealed this judgment, presenting the following assignments of error.

*Assignment of Error No. I*

**THE TRIAL COURT FAILED TO FIND THAT PLAINTIFFS-APPELLEES ENGAGED IN A DECEPTIVE SALE PRACTICE AND VIOLATED THE CONSUMER SALES PRACTICE ACT.**

*Assignment of Error No. II*

**THE TRIAL COURT FAILED TO PROPERLY AWARD DAMAGES SOUGHT IN DEFENDANTS-APPELLANTS' COUNTERCLAIM.**

*Assignment of Error No. I*

{¶3} In her first assignment of error, Cynthia argues that the trial court erred by suggesting that the home improvements were outside the scope of the CSPA because the "entire arrangement was, at best, informal" and between family members. (Docket No. 133). Cynthia argues that the trial court should have found the CSPA applicable to this transaction and that Dennis "engaged in deceptive sales practices in various ways." We disagree.

{¶4} On appeal, Cynthia specifically argues that Dennis committed deceptive practices by: charging for travel time; failing to divulge the addition of a one-percent surcharge for "shop materials"; underestimating the estimated cost of the home improvements; failing to provide Cynthia a written, itemized list of repairs performed or services rendered; and failing to "oversee[ ] the job site and provid[e] personal supervision to [Dennis's] employee when he promised such at the time he entered into the agreement with [Cynthia and Wayne] to make home

improvements." (Appellant's Brief at 10-16). Finally, Cynthia argues that the trial court erred by concluding that even assuming Dennis committed a deceptive practice, Cynthia's calculation of damages was "too arbitrary and obtuse to give rise to an appropriate award of damages, much less treble damages." (Docket No. 133, p. 4).

{¶5} When reviewing a trial court's judgment following a bench trial, an appellate court applies a manifest-weight standard of review. *Terry v. Kellstone, Inc.*, 6th Dist. Erie No. E-12-061, 2013-Ohio-4419, ¶ 12; *Patterson v. Patterson*, 3d Dist. Shelby No. 17-04-07, 2005-Ohio-2254, ¶ 26. *See also Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 7-23. "The standard of review for manifest weight is the same in a civil case as in a criminal case." *Terry* at ¶ 12, citing *Eastley* at ¶ 17.

{¶6} When applying the manifest-weight standard of review, the reviewing court reviews the entire record, " 'weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *Eastley* at ¶ 17, quoting *Tewarson v. Simon*, 141 Ohio App.3d 103, 115 (9th Dist.2001). *See also Terry* at ¶ 12, quoting *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, ¶ 220 and *State v. Thompkins*, 78 Ohio

St.3d 380, 387 (1997), *superseded by statute on other grounds as stated by State v. Smith*, 80 Ohio St.3d 89 (1997).

**{¶7}** "Under the manifest weight standard of review, we are 'guided by a presumption' that the fact-finder's findings are correct." *Id.*, citing *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 79-80 (1984). *See also Eastley* at ¶ 21; *Patterson* at ¶ 26. We must make " 'every reasonable intendment and every reasonable presumption * * * in favor of the judgment and the finding of facts.' " *Eastley* at ¶ 21, quoting *Seasons Coal Co.* at 80, fn. 3. " 'If the evidence is susceptible of more than one construction,' " we are " 'bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Id.*, quoting *Seasons Coal Co.* at 80, fn. 3.

**{¶8}** "The CSPA states that '[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.' " *Eisert v. Kantner Constr.*, 3d Dist. Auglaize No. 2-10-13, 2010-Ohio-4815, ¶ 19, quoting R.C. 1345.02(A). *See also Anderson v. Barclay's Capital Real Estate, Inc.*, 136 Ohio St.3d 31, 2013-Ohio-1933, ¶ 8.

**{¶9}** The CSPA defines "consumer transaction" as "a sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a

franchise, or an intangible, to an individual for purposes that are primarily personal, family, or household, or solicitation to supply any of these things." R.C. 1345.01(A). *See also Anderson* at ¶ 8. A "supplier" under the CSPA is "a seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions, whether or not the person deals directly with the consumer." R.C. 1345.01(C). *See also Anderson* at ¶ 29.

{¶10} The CSPA does not define "unfair or deceptive act or practice." *Hamilton v. Ball*, 4th Dist. Scioto No. 13CA3533, 2014-Ohio-1118, ¶ 35. However, R.C. 1345.02(B) contains a non-exhaustive list of deceptive acts and practices. *Id.*; *Eisert* at ¶ 19, citing R.C. 1345.02(B). In addition to this statutory list, "two other separate sources can determine what constitutes a violation of the CSPA: the Ohio Attorney General and the judiciary." *Eisert* at ¶ 19, citing R.C. 1345.09(B) and *Frey v. Vin Devers, Inc.*, 80 Ohio App.3d 1, 6 (6th Dist.1992). *See also Hamilton* at ¶ 35, citing R.C. 1345.05.

{¶11} "The CSPA is remedial in nature, having been designed to compensate for incomplete consumer remedies available at common law. * * * Thus, we must liberally construe the statute in favor of the consumer." *Anderson*, 2013-Ohio-1933 at ¶ 9, citing *Einhorn v. Ford Motor Co.*, 48 Ohio St.3d 27, 29 (1990), *Whitaker v. M.T. Automotive, Inc.*, 111 Ohio St.3d 177, 2006-Ohio-5481, ¶ 11, and R.C. 1.11. Nevertheless, the burden of proof is on the party bringing the

CSPA claim to prove by a preponderance of the evidence a violation of the CSPA. *Fikri v. Best Buy, Inc.*, 12th Dist. Warren No. CA2013-06-051, 2013-Ohio-4869, ¶ 19, citing *Adaptable Custom Homes, Inc. v. Affordable Luxury Homes, Inc.*, 12th Dist. Clinton No. CA91-05-008, 1992 WL 29236, *3 (Feb. 18, 1992).

**{¶12}** Cynthia first argues that the trial court erred by suggesting that the home improvements were outside the CSPA's scope based on the family relationship between Cynthia, Wayne, and Dennis. Despite this suggestion, the trial court addressed Cynthia's arguments concerning how she believed Dennis committed deceptive acts or practices under the CSPA, and it concluded that "there was [sic] no deceptive sales practices in this case * * *." (Docket No. 133).

**{¶13}** We need not address the trial court's suggestion that the home improvements were outside the scope of the CSPA because we conclude that, even assuming the parties engaged in a "consumer transaction" under the CSPA, the trial court did not clearly lose its way and create such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered when the trial court concluded that Dennis did not commit a deceptive practice in violation of the CSPA. *See Advantage Bank v. Waldo Pub, L.L.C.*, 3d Dist. Marion No. 9-08-67, 2009-Ohio-2816, ¶ 46, quoting *Bonner v. Bonner*, 3d Dist. Union No. 14-05-26, 2005-Ohio-6173, ¶ 18 ("It is a well settled rule of appellate review that '[a]

judgment by the trial court which is correct, but for a different reason, will be affirmed on appeal as there is no prejudice to the appellant.' ").

{¶14} Cynthia first argues that it was a deceptive practice for Dennis to charge travel time. She cites Ohio Adm.Code 109:4-3-05(D)(7), which provides: "In any consumer transaction involving the performance of any repair or service it shall be a deceptive act or practice for a supplier to * * * [f]ail to disclose upon the first contact with the consumer that any charge not directly related to the actual performance of the repair or service will be imposed by the supplier, including but not limited to * * * charges imposed by the supplier for traveling to the consumer's residence * * *."

{¶15} At trial, Dennis admitted that he did not include travel time in the "rough estimate" that he gave to Cynthia and Wayne at the cookout at Cory and Dea's house. (Feb. 6, 2012 Tr. at 91). Although Dennis could not remember precisely when he did so, he testified that he informed Cynthia and Wayne, before commencing work and at the time he discussed things such as whether Cynthia and Wayne wished him to bid the project or charge on a labor-and-material basis, that he charged for travel time. (Feb. 9, 2012 Tr. at 274); (Feb. 6, 2012 Tr. at 90-91). Cory testified that he remembered Cynthia and Wayne saying before preparation of the rough estimate, "[W]e know we might have to pay travel time * * *." (Feb. 6, 2012 Tr. at 203-204). Dennis testified that he charged for his

workers' travel time only to Cynthia and Wayne's house, not from their house, and that this practice is an industry standard. (*Id.* at 90-91).

{¶16} Although she does support her arguments with citations to the record, Cynthia argues that "evidence adduced at trial" illustrates that Dennis violated Ohio Adm.Code 109:4-3-05(D)(7). She argues that the rough estimate does not mention travel time. (*See* Feb. 6, 2012 Tr. at 91). Cynthia also argues that she did not learn about the travel-time charges until October 2007, when Cory, while drinking a beer with Wayne, mentioned that Dennis was charging for each worker's travel time to and from the worksite. (*See* Feb. 7, 2012 Tr. at 395). She points out that the invoices she paid did not include travel time as a separate itemized charge; rather, travel time was included in each worker's total labor time. (Appellant's Brief at 13). Finally, Cynthia testified that she would not have hired Dennis had she known Dennis would charge her for travel time. (Feb. 7, 2012 Tr. at 394).

{¶17} Based on this evidence, we cannot conclude that the trial court clearly lost its way concerning the travel-time portion of Cynthia's CSPA claim. Ohio Adm.Code 109:4-3-05(D)(7) states that it is a deceptive act or practice for a supplier "[i]n any consumer transaction involving the performance of any repair or service" not to disclose travel charges "upon the first contact with the consumer." By its use of "[i]n any consumer transaction," this rule applies once a "consumer

transaction" has commenced by, for example, a supplier's sale of or solicitation to supply household services, and "upon the first contact" in that consumer transaction.

{¶18} Evidence in the record demonstrates that Dennis informed Cynthia and Wayne of the travel charges before commencing work (i.e. before selling household services) and at the time he asked Cynthia and Dennis if they wanted him to bid the project or charge for labor and materials (i.e. before solicitation to supply household services). (Feb. 9, 2012 Tr. at 274). Moreover, the trial court may have reasonably concluded that a "consumer transaction" did not commence when Dennis shared the rough estimate with Cynthia and Wayne because he did so at a family get-together and later offered to bid the project. (Feb. 6, 2012 Tr. at 90-91); (Feb. 9, 2012 Tr. at 274). Finally, Cory testified that before Dennis prepared the rough estimate, Cynthia and Wayne said that they knew Dennis may charge for travel time. (Feb. 6, 2012 Tr. at 203-204). While there is conflicting evidence in the record susceptible of more than one construction, we must interpret it consistently with the trial court's judgment, and we cannot conclude that the trial court lost its way. *See Eastley*, 132 Ohio St.3d 328, at ¶ 21.

{¶19} Cynthia next argues that Dennis committed a deceptive sales practice by not divulging the addition of a one percent surcharge for "shop materials." Although she does not say so specifically, Cynthia appears to believe that Dennis

violated Ohio Adm.Code 109:4-3-05(D)(7), which provides: "In any consumer transaction involving the performance of any repair or service it shall be a deceptive act or practice for a supplier to * * * [f]ail to disclose upon the first contact with the consumer that any charge not directly related to the actual performance of the repair or service will be imposed by the supplier, including but not limited to service charges * * *."

{¶20} Dennis testified that before work commenced, perhaps at Cory and Dea's house, he informed Cynthia that he normally marked up his materials four or five percent, but "she didn't like that," so he agreed to charge only a one or two percent materials surcharge. (Feb. 6, 2012 Tr. at 27-28, 72-73); (Feb. 9, 2012 Tr. at 275-276). According to Dennis, the standard materials surcharge in the industry varies but is typically "around ten percent" when a contractor charges for labor and materials. (Feb. 6, 2012 Tr. at 72). Dennis testified that three months or so after commencing the work, and in response to "some questioning about this extra percentage," he stopped imposing the materials surcharge and "billed what [he] was getting billed." (Feb. 9, 2012 Tr. at 275-276). Cynthia testified that Dennis and Cory never informed her of any materials surcharge or "overcharge." (Feb. 7, 2012 Tr. at 439-441).

{¶21} For reasons similar to those stated in our analysis above of the travel-time charge, we conclude that the trial court did not lose its way by concluding

that Dennis did not violate the CSPA as to the materials surcharge. Evidence in the record demonstrates that Dennis informed Cynthia and Wayne of the materials surcharge before commencing work and even agreed, in response to Cynthia's objection, to charge a lower percentage than he normally would. (Feb. 6, 2012 Tr. at 27-28, 72-73); (Feb. 9, 2012 Tr. at 275-276).

{¶22} Cynthia also argues that Dennis violated Ohio Adm.Code 109:4-3-05(D)(11) and 109:4-3-05(D)(12). Those rules provide:

> (D) In any consumer transaction involving the performance of any repair or service it shall be a deceptive act or practice for a supplier to:
>
> * * *
>
> (11) Materially understate or misstate the estimated cost of the repair or service;
>
> (12) Fail to provide the consumer with a written itemized list of repairs performed or services rendered, including a list of parts or materials and a statement of whether they are used, remanufactured, or rebuilt, if not new, and the cost thereof to the consumer, the amount charged for labor, and the identity of the individual performing the repair or service * * *.

Ohio Adm.Code 109:4-3-05(D)(11) and 109:4-3-05(D)(12).

{¶23} Specifically as to Ohio Adm.Code 109:4-3-05(D)(11), Cynthia argues that Dennis estimated the home improvements would cost $126,868, including $7,500 for heating and air conditioning and that Dennis received $163,514.12 for seven invoices, and $22,131.77 went unpaid, for a total of

$185,645.89 invoiced. The difference between the rough estimate and the invoiced amount is approximately $58,778. However, Dennis testified at trial that much of the cost overruns were due to Cynthia's expansion of the scope of the home improvements and directives to install more expensive options. (Feb. 6, 2012 Tr. at 29-32, 46-71, 80-81, 89-90); (Feb. 9, 2012 Tr. at 280-284).

{¶24} Dennis testified, for example, that Cynthia requested stamped rather than standard concrete in the basement; a 50-year rather than 30-year roof shingle; a marbled walk-in shower rather than a standard tub-shower unit; additional and higher-grade kitchen cabinets; a bar with a sink in the basement; and three fireplaces rather than one. (*Id.*). The additional work necessitated material and labor not included in the estimate—for example, additional cabinets, insulation, drywall, and trim. (*See id.* at 53-54). The additional and upgraded kitchen cabinets alone accounted for approximately $12,500 of the $58,778 discrepancy. (Feb. 6, 2012 Tr. at 55); (Feb. 7, 2012 Tr. at 420-421). Dennis admitted that he underestimated the cost of excavation for the basement. (Feb. 6, 2012 Tr. at 46).

{¶25} Cynthia admitted on cross-examination that she directed Dennis and those working for him to perform additional work at the house, but she said there "wasn't a whole lot." (Feb. 8, 2012 Tr. at 42-46). She agreed that much of the work performed by Dennis was not included in the rough estimate. (Feb. 7, 2012 Tr. at 415-432).

{¶26} Once again, while there is conflicting evidence in the record susceptible of more than one construction, we cannot conclude that the trial court lost its way concerning whether Dennis materially understated or misstated the estimated cost of the repair or service under Ohio Adm.Code 109:4-3-05(D)(11). Dennis's rough estimate did not encompass, and was not intended to encompass, the additional work performed at Cynthia's request. Therefore, contrary to Cynthia's argument, Dennis's invoicing approximately $58,778 more than he estimated does not demonstrate that he materially understated or misstated the estimated cost of the repair or service.

{¶27} Cynthia argues that Dennis violated Ohio Adm.Code 109:4-3-05(D)(12) by failing to provide Cynthia a written, itemized list of repairs performed or services rendered. Dennis testified that in his invoices to Cynthia and Wayne, he explained the material cost in addition to supplying them with copies of his materials receipts, invoices, and copies of the workers' timecards. (Feb. 6, 2012 Tr. at 71-72). Dennis identified Plaintiff's Exhibits L, M, N, O, Q, R, S, T, and U as his invoices to Cynthia and Wayne. (*See* Feb. 6, 2012 Tr. at 33-44). These invoices contained itemized lists of materials and their costs, as well as the amount charged for labor. (*See* Plaintiff's Exs. L, M, N, O, Q, R, S, T, U). When itemizing many of the materials, Dennis identified the home improvement to which the materials corresponded. (*See id.*). For example, in Plaintiff's Exhibit

Q, Dennis's December 7, 2007 invoice to Cynthia and Wayne, Dennis included "Gordon Lumber venting for fireplaces," which totaled $1,276.03. (Plaintiff's Ex. Q). Attached to the invoices are copies of receipts and invoices for materials and copies of timecards. (*See* Plaintiff's Exs. L, M, N, O, Q, R, S, T, U). Also attached to Plaintiff's Exhibit L, Dennis's first invoice to Cynthia and Wayne dated August 16, 2007, are Dennis's handwritten notes and sketches of home improvements and related materials, measurements, and dimensions, along with price information. (Plaintiff's Ex. L). (*See also* Plaintiff's Ex. JJJ).

{¶28} Cynthia testified that she, John, and Dennis met in November 2007, and John asked Dennis to provide an accounting of work performed. (Feb. 7, 2012 Tr. at 390-391). In response, Dennis supplied a document, which Cynthia identified as Plaintiff's Exhibit K and described as "an estimate for things that were already done." (*Id.* at 391); (Feb. 8, 2012 Tr. at 40-41). Cynthia testified that she and John "didn't get exactly what we wanted in the meeting from [Dennis] * * *." (*Id.* at 40).

{¶29} Based on this evidence, we conclude that the trial court did not lose its way concerning whether Dennis failed to provide a written, itemized list of repairs performed or services rendered under Ohio Adm.Code 109:4-3-05(D)(12). Dennis's recordkeeping may have been far from ideal, and Cynthia was apparently not satisfied with the documents Dennis provided. However, the record reflects

that Dennis provided a rough estimate, detailed invoices listing materials and labor and their costs, receipts, timecards, and a list of additional services performed. The trial court did not create a manifest miscarriage of justice by concluding that Dennis did not violate Ohio Adm.Code 109:4-3-05(D)(12).

{¶30} Finally, in a single sentence, and without citing evidence in the record or legal authority, Cynthia argues that Dennis violated the CSPA by failing to "oversee[ ] the job site and provid[e] personal supervision to [Dennis's] employee when he promised such at the time he entered into the agreement with [Cynthia and Wayne] to make home improvements." (Appellant's Brief at 16). At trial, Dennis testified that he told Cynthia "from the beginning" that "Cory would be running the job." (Feb. 6, 2012 Tr. at 93). Dennis described Cory as "the job site foreman," although Dennis "sometimes" acted as a supervisor, and Dennis was available if Cory had questions. (*Id.* at 94). Based on this testimony and Cynthia's lack of citations to testimony to the contrary, we conclude that the trial court did not lose its way concerning whether Dennis violated the CSPA by not acting as a fulltime jobsite supervisor.

{¶31} In summary, we conclude that the trial court's judgment concerning Cynthia's CSPA counterclaim was not against the manifest weight of the evidence because the trial court did not clearly lose its way and create a manifest miscarriage of justice when it concluded that Cynthia failed to demonstrate that

Dennis violated the CSPA. Based on that conclusion, we need not address Cynthia's additional argument that the trial court erred by concluding that Cynthia's calculation of damages was "too arbitrary and obtuse to give rise to an appropriate award of damages, much less treble damages," even assuming Dennis violated the CSPA.

{¶32} Accordingly, we overrule Cynthia's first assignment error.

*Assignment of Error No. II*

{¶33} In her second assignment of error, Cynthia argues that the trial court "failed to properly award damages sought in [Cynthia's] counterclaim regarding the kitchen countertop, the surcharge, the ceiling beams, the basement flooding, the concrete drive, the fireplace and gutters, and the accounting errors." (Appellant's Brief at 17). We disagree.

*Standard of Review*

{¶34} Since Cynthia is challenging the trial court's award of damages, we will review the court's decision under an abuse of discretion standard. *Reinbolt v. Kern*, 183 Ohio App.2d 287, 2009-Ohio-3492 (6th Dist.), citing *Roberts v. United States Fid. & Guar. Co.*, 75 Ohio St.3d 630, 634 (1996), and *Norfolk S. Ry. Co. v. Toledo Edison Co.*, 6th Dist. Lucas No. L-06-1268, 2008-Ohio-1572, ¶ 56). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v.*

*Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Cynthia's Counterclaims*

{¶35} In this assignment of error, Cynthia specifically argues that the trial court failed to properly award her damages that she sought in her "counterclaim." However, Cynthia does not tell this court from which counterclaim she is seeking damages. Cynthia and Wayne asserted only two counterclaims: slander of title and violation of the CSPA. (Docket No. 4). We concluded above that the trial court's judgment concerning Cynthia's CSPA counterclaim was not against the manifest weight of the evidence. Therefore, the damages Cynthia is seeking must relate to her first counterclaim for slander of title.

{¶36} "Slander of title to real estate is a tort action against one who falsely and maliciously defames title to property and causes some special pecuniary damages or loss." *Prater v. Dashovsky*, 10th Dist. Franklin No. 07AP-389, 2007-Ohio-6785, ¶ 11, citing *Hahn's Elec. Co. v. Cochran*, 10th Dist. Franklin No. 01AP-1391, 2002-Ohio-5009, ¶ 24. Typically, slander of title involves "the wrongful recording of an unfounded claim, such as a mechanic's lien, to the property of another." *Prater*, citing *Green v. Lemarr*, 139 Ohio App.3d 414, 433

(2d Dist.2000). To prevail on a claim of slander of title, the claimant must prove: " '(1) there was a publication of a slanderous statement disparaging claimant's title; (2) the statement was false; (3) the statement was made with malice or made with a reckless disregard of falsity; and (4) the statement caused actual or special damages.' " *Green* at 430-431, quoting *Colquhoun v. Webber*, 684 A.2d 405, 409 (Me.1996).

{¶37} We note that there was no evidence presented at trial concerning the mechanic's lien Dennis filed, or that the lien was filed with a malicious intent or with a reckless disregard of falsity, or that the lien caused actual or special damages. Since the damages Cynthia seeks in this assignment of error have no relation to the only remaining counterclaim Cynthia actually pled—slander of title—we cannot say the trial court erred in failing to award her damages.

*Recoupment*

{¶38} It appears that the "damages" Cynthia seeks in this assignment of error relate to the fourth defense she pled in her answer where she claimed that she is entitled to "recoupment or set/off" for the shoddy manner in which work was performed on her house. (Docket No. 2, p. 2-3). At this point, we are unsure if Cynthia and the trial court are under the impression that Cynthia pled a third counterclaim, or if they are treating her affirmative defense as a counterclaim, or if

they do not know what the elements for slander of title are.[2] However, we note that recoupment is an affirmative defense, not a counterclaim. *Tejeda v. Toledo Heart Surgeons, Inc.*, 186 Ohio App.3d 465, 2009-Ohio-3495, ¶ 56 (6th Dist.); *Ignash v. First Service Federal Credit Union*, 10th Dist. Franklin No. 01AP-1326 2002-Ohio-4395, ¶ 26; *Haddad v. English*, 145 Ohio App.3d 598, 603 (9th Dist.2001).

**{¶39}** As explained supra, the "damages" Cynthia seeks in this assignment of error do not arise from any of her two counterclaims. And despite the trial court's use of the term "off-set" in its judgment entries, it appears Cynthia is seeking a reduction of Dennis' damages under the legal theory of recoupment, not setoff.

**{¶40}** The Ohio Supreme Court has defined setoff as "that right which exists between two parties, each of whom under an independent contract owes a definite amount to the other, to set off their respective debts by way of mutual deduction." *Witham v. S. Side Bldg. & Loan Assn. of Lima*, 133 Ohio St. 560 (1938). *See also Am. Motorists Ins. Co. v. Olin Hunt Specialty Products, Inc.*, 10th Dist. Franklin No. 00AP-1313, 2001 WL 1098013, *3, citing *Continental Acceptance Cor. v. Rivera*, 50 Ohio App.2d 338, 344 fn. 17 (8th Dist.1976),

---

[2] In its most recent judgment entry, the trial court stated that the amount of "$22,131.67 less an offset judgment in the amount of $1,341.22 owed by Plaintiff Dennis D. Dye [sic] to Defendant Cynthia K. White-Rhoades arising out of her *First Counterclaim for slander of title.* The sum of $1,341.22 represents damage caused by Plaintiff to the value of the property due to defective workmanship outlined in this court's December 21, 2012 Judgment Entry." (Emphasis added.) (Docket No. 153, p. 2-3).

quoting 3 Moore's Federal Practice, para. 13.02, note 1 (1978) (Sept. 20, 2001) ("[A] setoff is * * * 'a demand asserted to diminish or extinguish a plaintiff's demand, which arises out of a transaction different from that sued on, and which must be liquidated and emerge from a contract or judgment.' ").

{¶41} "Recoupment, on the other hand, is, 'a demand arising from the same transaction as the plaintiff's claim.' " *Tejeda,* 2009-Ohio-3495 at ¶ 53. Generally, recoupment is "[t]he right of a defendant to have the plaintiff's claim reduced or eliminated because of the plaintiff's breach of contract or duty in the same transaction." *Black's Law Dictionary* 1466 (10th Ed.2014).

> " '[Recoupment] does not confess the indebtedness alleged in the complaint, as is understood by a setoff, but its proposition is that the plaintiff's claim is based on a particular contract or transaction and that to entitle the plaintiff to the sum claimed, he must prove compliance with certain obligations of the contract; that he failed to do so; and therefore that the defendant has been so damaged in the transaction that the plaintiff is not entitled to recover.' "

*Tejeda* at ¶ 54, quoting *Cauffiel Mach. Co. v. E. Steel & Metal Co.*, 59 Ohio App.2d 1, 6 (6th Dist.1978), quoting 20 American Jurisprudence 2d 235, Counterclaim, Recoupment and Setoff, Section 11.

{¶42} This matter arose over one transaction, the remodeling contract between the two parties. Therefore recoupment, not setoff, applies. Further, because recoupment limits a plaintiff's damages, we cannot reverse a trial court's decision regarding its determination of damages absent a showing that the trial

court abused its discretion. *See Reinbolt*, 2009-Ohio-3492 at ¶ 38, citing *Roberts*, 75 Ohio St.3d at 634 and *Norfolk S. Ry. Co.*, 2008-Ohio-1572 at ¶ 56. However, in some of her arguments, Cynthia argues that the trial court erred in determining Dennis's liability for certain wrongdoings. Thus, we will apply a manifest-weight standard of review when assessing these arguments. *See Kellstone,* 2013-Ohio-4419 at ¶ 12; *Patterson*, 2005-Ohio-2254 at ¶ 26.

**{¶43}** Cynthia first argues that the trial court erred in not awarding her $12,016.18, the cost of replacing her countertop. Dennis testified a subcontractor for Style Stone installed the countertop. (Feb. 6, 2012 Tr. at 106). Dennis, Cory, and Cynthia all testified that Nye Construction was not involved with the installation of the countertop. (*Id.* at 106-107, 205-207, 257-258, 264-266; Feb. 8 2012 Tr. at 32-33). Cynthia stated that she did not pay Nye Construction for the countertop, but instead was invoiced by ABC. (Feb. 8, 2012 Tr., at 33).

**{¶44}** Cynthia argues that her expert witness, John Probst, gave his expert opinion that the crack in her countertop was caused by the cabinets not being level. (*Id.* at 163-164). However, Probst also testified that the person installing the new countertop had the duty to make sure the countertop was level. (*Id.* at 169). Since it is undisputed that Nye Construction had no part in installing the countertop, we cannot find that the trial court erred in finding that Dennis was not liable for $12,016.18, the amount it would cost to replace the cracked countertop.

{¶45} In regard to Cynthia's claim that she is entitled $944.70, which represents the one percent surcharge the plaintiffs imposed on the materials, we have already found that such was a normal business practice, not deceptive, and likewise find that the trial court did not err in refusing to award her the surcharge.

{¶46} Next, Cynthia argues that she is entitled to reduce Dennis's damages by the damages she sustained in connection to her basement flooding. All parties agree that Cory forgot to reconnect a sump pump shortly before a rain storm. What is at issue is how much damage occurred due to the flooding. Cynthia argues that she incurred $13,680 in damages, whereas Dennis argues that the damage was minimal. Cynthia offered Exhibit 201 into evidence, which detailed each item that was allegedly damaged during the flood and the price of each item. The most expensive items that were damaged were the pool table, bar, four bar stools, and poker table with four chairs. She valued that the cost to replace these items was $9,000-10,000.

{¶47} Cynthia offered many pictures of the basement into evidence and also the testimony of Mark Gordon, who was with Wayne when they discovered the flooding. Gordon testified that there was "over an inch" of water in the basement. (Feb 7, 2012 Tr. at 327). Gordon testified that he was at Cynthia and Wayne's residence because they had bought the pool table, bar, and a game table from his employer, Scioto Valley, and they made a report that these items were

scratched. (*Id.* at 326). Gordon testified that Scioto Valley replaced the bar top and two chairs. (*Id.* at 333). Cynthia also offered numerous exhibits of pictures she took after the flooding occurred and when the water subsided. The pictures depict many boxes and ceiling tiles that were wet. However, Cynthia offered no pictures of how much water was actually in the basement at the time of the flooding. She also offered few pictures of the pool table, poker table, bar, or stools that demonstrated how they were damaged by the flood.

{¶48} In contrast, Dennis offered pictures of the poker table, bar, and chairs that he took the day after the flooding incident. The pictures show the chairs and table in good shape and also a layer of dust that was present on the bottom of the chairs and the table. *See* (Plaintiff's Exs. RR, SS, TT, VV, XX, YY, ZZ). Cory testified that he was at Cynthia and Wayne's house when they discovered the flooding. (Feb. 6, 2012 Tr., p. 173). According to Cory, there was "a little bit of water in the basement." (*Id.*). Cory stated that there was a "half inch, maybe an inch of water" in the lower part of the basement, but that most "of the basement on the higher parts was all dry." (*Id.* at 174). Cory testified that some ceiling tile was damaged, but not much else. (*Id.*). Similarly, Nick testified that the water damage was minimal. Specifically, Nick testified that the basement floors were "stamped concrete, and the water level was in the cracks * * *. It [sic] may have been a few places where it was above them, but, if any, not really. It was in the cracks. You

could walk around with socks and not get your feet wet." (Feb. 7, 2012 Tr. at 227). Other than a few of the cardboard boxes being wet, Nick could not "recall stuff being damaged." (*Id.*).

**{¶49}** Dennis also offered Exhibit CCC, which was a letter from Trudy Bushman, a claims representative from Auto-Owners Insurance, which stated that she could not see damage to the items Cynthia was claiming were damaged and advised Cynthia to contact ServePro to dry her basement in order to mitigate her damages.

**{¶50}** Again, there was conflicting evidence presented regarding the damage done to Cynthia's basement and Cynthia's failure to mitigate her damages. We cannot say that the trial court abused its discretion in denying recoupment for Cynthia in this regard.[3]

**{¶51}** Cynthia also argues that the trial court erred when it failed to award her damages for the cracked driveway. It is undisputed that a portion of Cynthia's driveway was cracked and damaged. What was disputed was the cost to repair the driveway. Cynthia presented the testimony of Rocky Jordan, who testified that it would cost $3,150.00 to replace the entire driveway. However, Jordan did not testify what it would cost to replace only the block of driveway that was cracked.

---

[3] In its judgment entry, the trial court repeatedly referred to what he saw at the view of the premises when explaining why it denied Cynthia's request for damages for her flooded basement. It is well-established that a view is not evidence. *See Dept. of Natural Resources v. Ebbing*, 28 N.E.2d 682, 2015-Ohio-471, ¶ 63 (3d Dist.), citing *City of Akron v. Alexander*, 5 Ohio St.2d 75, 77-78 (1966). However, since there was other proper evidence in the record to support the trial court's decision, we find that any reference to what he observed during the view was harmless.

The trial court found that Cynthia was not entitled to replace the entire driveway, only the portion that was cracked, and since she did not present any evidence on what it would cost to repair the cracked portion, she was not entitled to recoupment on this issue.

{¶52} Cynthia argues in her brief that Dennis had the burden of providing the estimate of what it would cost to repair the affected portion of the driveway. However, she cites no case law to support this assertion. Moreover, we note that Dennis never admitted he caused the damage to Cynthia's driveway. The fact that Dennis contested his liability makes it more unreasonable to require him to provide an estimate to repair a driveway that he maintains he did not damage. Therefore, we cannot find that the trial court abused its discretion in denying Cynthia's request for $3,500 to replace her driveway.

{¶53} Finally, Cynthia argues that Dennis committed various accounting errors, overcharges, and upcharges on invoices. In its judgment entry, the trial court stated that it "reviewed the explanation advanced by the Plaintiff regarding these issues at Pages 17-18 of the Defendant's Memorandum in Support filed November 21, 2012 and accepts those explanations." (Docket No. 133, p. 11). Cynthia argues that the court could not rely on explanations in Dennis's memorandum in support. We agree with Cynthia that a court must only rely on the evidence and testimony presented at trial when reaching its decision.

However, the arguments advanced in Dennis's memorandum in support were based upon testimony and evidence presented at trial. Namely, Dennis explained that most of the overcharges were due to the one percent surcharge he billed Cynthia. We have already decided that this was a normal business practice. Therefore, we cannot say that the trial court erred in this regard.

{¶54} Cynthia also makes the conclusory statement that the trial court failed to properly award her damages for "the ceiling beams [and] * * * the fireplace and gutters * * *." (Appellant's Br. at 17). However, Cynthia does not explain why the trial court erred, what amount she is seeking to recoup, or provide this court with any citations to the record or authorities to support her argument. Consequently, Cynthia has failed to comply with App.R. 16(A)(7), which requires her to include in each assignment of error an argument explaining "the reasons in support of the contentions, with citations to the authorities, statutes, and part of the record on which appellant relies." We choose not to address these conclusory statements pursuant to App.R. 12(A).

{¶55} In conclusion, we find that Cynthia did not plead a counterclaim for negligence or breach of contract and insofar that she seeks damages under these unpled theories, the trial court did not err in denying her damages. Even if Cynthia was seeking to reduce Dennis's damages under her properly pled affirmative defense of recoupment, we find that the trial court made no reversible

error by refusing to reduce Dennis's damages for Cynthia's kitchen countertop, the surcharge, the basement flooding, the concrete drive, or the accounting errors.

{¶56} Accordingly, Cynthia's second assignment of error is overruled.

{¶57} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**PRESTON and WILLAMOWSKI, J.J., concur.**

**/jlr**